Seth E. **BLACKWELL**, Sr.,
Petitioner,

v.

Charles L. **WOLFF**, Jr., **Respondent.**
No. Civ. 1659 L.

United States District Court,
D. Nebraska.
June 2, 1975.

Charles E. Wright, Lincoln, Neb., for petitioner.

Chauncey C. Sheldon, Asst. Atty. Gen., for respondent.

## MEMORANDUM

URBOM, Chief Judge.

Seth E. Blackwell, Sr., an inmate at the Nebraska Penal and Correctional Complex, has petitioned this court for a writ of habeas corpus. He was sentenced to life imprisonment by the District Court of Lancaster County, Nebraska, on January 6, 1968, following his conviction of second degree murder. In his amended petition filed in this court on April 12, 1974, the petitioner alleges that:

(a) The state trial judge erred in segregating the petitioner at the trial in the District Court of Lancaster County, in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States.

(b) The trial in the state court violated the petitioner's rights under the Sixth and Fourteenth Amendments to the Constitution in that he was not mentally competent to stand trial on the dates of October 30 through November 6, 1968.[1]

(c) The state trial judge erred in not declaring a mistrial, thereby violating the petitioner's rights under the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States.

(d) The trial judge erred in not admonishing or instructing the jury concerning the outbursts that occurred during the trial, in violation of the petitioner's rights under the provisions of Amendments

---

1. This date is erroneously shown in the amended and supplementary petition. The trial was held in 1967 and the petition will be considered amended accordingly.

V, VI, and XIV of the Constitution of the United States.

The case history of this protracted litigation is as follows:

October 30, 1967 —The petitioner's trial began in the state court.

November 3, 1967 —The petitioner moved for an examination and a mistrial based on the petitioner's mental instability.

December 15, 1967 —The petitioner's motion for a mistrial based on his mental instability was denied.

January 6, 1968 —The petitioner was sentenced to life imprisonment for second degree murder.

March 7, 1969 —The Supreme Court of Nebraska in *State v. Blackwell*, 184 Neb. 121, 165 N.W.2d 730 (1969), denied the petitioner's direct appeal which attacked the admission of certain exhibits and testimony of the petitioner, the failure to grant a mistrial because of emotional outburst of the petitioner, and the length of the sentenced imposed.

February 17, 1971 —This court denied the petitioner's habeas corpus petition which contested basically the seating arrangements in his state court trial, the competency of his state court attorney, and the failure to grant a mistrial.

January 24, 1972 —The United States Court of Appeals vacated this court's decision regarding segregating the seating arrangements at the trial, incompetency of counsel, failure to declare a mistrial and failure to give appropriate instructions, because the petitioner had not sufficiently exhausted his state court remedies.

May 4, 1973 —The District Court of Lancaster County, Nebraska, held that the petitioner was not entitled to post-conviction relief on the claims that he was mentally incompetent to stand trial in 1967 and unconstitutionally segregated from his attorney during that trial.

January 18, 1974 —The Supreme Court of Nebraska in *State v. Blackwell*, 191 Neb. 155, 214 N.W.2d 264 (1974), affirmed the district court's findings of May 4, 1973.

———————

Since the major thrust of the petitioner's amended and supplemental petition concerns his competency to stand trial, I consider that issue first.

Because a substantial question has been presented about the basis for the state court's factual determination of this issue, an evidentiary hearing was held in

this court under the authority of *Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). See also *Williams v. Brewer*, 509 F.2d 227 (C.A. 8th Cir. 1974). Even though the state courts have previously decided that the petitioner was competent to stand trial in 1967, I have an obligation to reevaluate that decision if it was based on insufficient or inadequate evidence or if the material facts surrounding the issue were not adequately developed. 28 U.S.C. § 2254(d). Furthermore, if a determination can now be made through the use of expert testimony about the petitioner's competency on October 30, 1967, I am obligated to make that determination. *Bruce v. Estelle*, 483 F.2d 1031 (C.A. 5th Cir. 1973).

Convicting an accused person while he is legally incompetent violates the due process clause of the United States Constitution. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956). The standard for determining such competency is stated in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), as follows:

" . . . We also agree with the suggestion of the Solicitor General that it is not enough for the district judge to find that 'the defendant [is] oriented to time and place and [has] some recollection of events,' but that the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.' "

With this standard in mind a more objective view can be taken of the petitioner's actions between September and November of 1967. While no single event would particularly indicate any mental disturbance, the totality of the actions presents an indication of possible mental incompetency. The petitioner's actions during the last quarter of 1967

which evidence his incompetency to stand trial on October 30, 1967, are as follows:

(1) On September 16, 1967, the petitioner, in custody at the Lancaster County jail in Lincoln, Nebraska, was found violently ill, sick and moaning in his cell, by a member of the Lincoln police department.

(2) On September 17, 1967, the petitioner, incarcerated in a solitary cell at the Nebraska Penal and Correctional Complex, was discovered to have physically broken the handcuffs which had been placed around his wrists.

(3) On September 17, 1967, the petitioner, who was placed in the Penal Complex hospital following the handcuff incident, destroyed the contents of his hospital cell, tearing apart his mattress and ripping out steel-braced windows. (There has been testimony that tear gas used to quiet the petitioner during this incident was ineffective.)

(4) On October 4, 1967, the petitioner while conferring with his attorney attacked the attorney without provocation.

(5) On October 11, 1967, the petitioner twice attempted to hang himself in his solitary cell at the Penal Complex.

(6) On October 17, 1967, the petitioner without provocation and while in a solitary cell at the Penal Complex started to make a great deal of noise and threw a quantity of feces at a prison guard, who described the prisoner to be in an excited rampage.

(7) Between October 30, 1967, and November 6, 1967, the petitioner on two occasions suddenly stood up during his trial and uttered in a loud voice, first, that he could not go through any more of the trial, and second, that "They are

trying to send me to the penitentiary; my wife won't have anybody to support her; she will be on the street being raped by every man on the street; there isn't anything I can do, because if I try to escape they will shoot and kill me; my case is getting all screwed up."

This behavior was at least indicative of some possible mental problems affecting the petitioner, and an adequate determination of his stability should have been made. The expert testimony convinces me that such an adequate determination was never made.

There is an abundance of expert testimony surrounding this suit, and it is imperative to distinguish the relevant scope of that testimony as it was given at the various hearings. The first medical report concerning the petitioner's mental stability was given by Dr. Robert J. Stein, a psychiatrist, on September 26, 1967, prior to the trial. His report was initially given to the petitioner's trial attorney, Mr. Farley Young (now deceased), and was filed in the District Court of Lancaster County, Nebraska, on November 3, 1967. In the report Dr. Stein stated that the petitioner:

". . . had a Ganser reaction and this syndrome is an acute hallucinatory mania, a reaction due either to the confinement in jail or to his fear of his own future. It is further my opinion that he is mentally competent and that he is able to make a plea to the Court."

In Dr. Stein's testimony before this court in the habeas hearing of May 1, 1975, it was made clear that Dr. Stein's examination and report of September, 1967, were for the purpose only of determining and informing the trial court of Blackwell's competency to enter a plea of guilty to the charge of second degree murder and that Dr. Stein did not in 1967 make any decision as to Blackwell's competency to stand trial.

The next psychiatric evaluation was by Dr. Leonard Woytassek, a psychiatrist at the Lincoln Regional Center in Lincoln, Nebraska. He examined the petitioner on November 22, 27 and 30, 1967, about two weeks after the trial. His report to the District Court of Lancaster County, Nebraska, which was filed by that court on December 14, 1967, stated:

"It is my psychiatric opinion that Mr. Blackwell is aware of his surroundings, that he is able to comprehend things happening around him. It is also my opinion that Mr. Blackwell has known and does know the nature and quality of his actions and that he does know and has known right from wrong.

"In all probability Mr. Blackwell will be able to tolerate a prison sentence. He may, of course, create some problems because of his impulsiveness and explosive behavior."

Dr. Woytassek was not called as a witness before this court, but he gave extensive testimony at the petitioner's state post-conviction hearing in 1973, wherein he stated that he did not make any determination in 1967 as to whether Blackwell was mentally competent to stand trial between October 30 and November 6 of 1967. When asked a hypothetical question which incorporated all the factual findings I have made, Dr. Woytassek stated that he did have an opinion as to whether or not the petitioner was competent to stand trial on October 30, 1967, and said:

"My opinion would be that . . . based upon the assumptions, I would have serious doubts that Mr. Blackwell had the capacity to relate in a meaningful way to his attorney, enough so that he would be able to stand trial."

Dr. Woytassek further stated on cross-examination:

"To me, a man in order to be competent to stand trial, one of the important things is he must be able to relate to his attorney in a meaningful way. They don't have to like each other, or anything, but they have to

be able to communicate in a meaningful way. We assume these incidents occurred with his attorney, as related in the hypothetical question, and I do not see how Mr. Blackwell could relate in a meaningful way with his attorney in order to get the relationship so that he could stand trial."

It is important to note that Dr. Woytassek testified in the post-conviction hearing that he had not examined the defendant to determine competency to stand trial, but that he determined only the petitioner's mental capacity to undergo a sentence. Although Dr. Woytassek was supposed to examine the defendant shortly after the trial in relation to the petitioner's motion for a mistrial based on his mental incompetency to stand trial as evidenced by his courtroom outbursts, there obviously was a communication breakdown between the trial court and the doctor as to the exact nature of his examination.

Dr. Woytassek was assisted in his evaluations and examination of the petitioner by Dr. Vernon E. Fisher, a clinical psychologist. Dr. Fisher testified at the 1973 post-conviction hearing that he administered to the petitioner in November of 1967 "the Wechsler Adult Intelligence test, the Comprehensive test, the usual similarities test, the Theoretical Appreciation test, the figure drawing test, the Bender-Gestalt test, and a test that is used both for equating personality and as an indication of possible organic brain damage or disfunction." The report of Dr. Fisher was submitted to Dr. Woytassek, who in turn submitted it to the District Court of Lancaster County, Nebraska, where it was filed on December 14, 1967. In the report Dr. Fisher stated:

"In summary, Mr. Blackwell is a cautious and guarded individual of essentially average intelligence who is not overly psychotic at this time. It is speculated that his personality construction, slowness and difficulty in effectively mobilizing his energy and resources, and at least some of his

guardedness and caution, are the result of his efforts to prevent disturbing underlying, unconscious material, likely psychotic in nature, from entering his conscious awareness. Under severe stress Mr. Blackwell may develop transient psychotic episodes."

Dr. Fisher was never asked to express his opinion about the competency of the petitioner to stand trial, but his findings have been taken into account by the three psychiatrists who have given testimony.

Dr. Herbert C. Modlin, a psychiatrist and staff member of the Menninger Foundation of Topeka, Kansas, examined the petitioner on December 18, 1972, some five years after the petitioner's criminal trial. He testified at the 1973 post-conviction hearing that he had been supplied with copies of the reports, tests and evaluations of Drs. Woytassek, Stein and Fisher, had read the petitioner's trial testimony, the various prison reports concerning the petitioner's activities prior to trial, and the affidavit of the petitioner's trial attorney about the petitioner's attack on him. At the post-conviction hearing Dr. Modlin testified that it was possible from this information for a psychiatrist to determine whether the petitioner was competent to stand trial in 1967. However, the doctor was not allowed to state his opinion on that question because the district court sustained the state's objection of irrelevancy, immateriality, ultimate question, and a matter previously decided by the Supreme Court of Nebraska. On what specific ground the court sustained the objection is not clear, but the fact remains that Dr. Modlin was never allowed to deliver his opinion in the state court proceedings.

Dr. Modlin did testify before this court on May 1, 1975. Based upon the petitioner's capacity to understand the nature of the trial proceedings, to cooperate with his attorney, to assist his attorney at the trial and to understand the communication between himself and his attorney, as revealed in the reports and

files he had read in 1973 and the court reporter's transcript of the 1973 post-conviction hearing, Dr. Modlin concluded that Blackwell's competency to stand trial was significantly impaired in 1967. He stated that the petitioner's perception and judgment were grossly impaired, that the petitioner could neither cope with nor adapt to the change in his environment, including his experiences in solitary confinement, that the petitioner had no capacity at his trial to make judgments and decisions about the various witnesses presented for and against him, and that the petitioner lacked substantial capacity to relate to the events taking place at his trial.

Lastly, Dr. Robert Stein, who had examined Blackwell shortly before the trial in 1967 to assess his ability to enter a plea of guilty, testified at the habeas hearing in this court on May 1, 1975, that in his opinion Blackwell was not competent in 1967 to stand trial. This opinion was based on the pretrial examination he had made, plus the reports and testimony of Drs. Fisher, Woytassek and Modlin, the testimony given in the petitioner's post-conviction hearing of May 4, 1973, and the various reports of the petitioner's erratic behavior filed by the officers of the Lincoln police department and the Nebraska Penal and Correctional Complex. Blackwell, according to Dr. Stein, was overly suspicious, overly guarded, and overly scared, and showed tendencies to go completely out of touch with reality. Dr. Stein stated that the petitioner was too guarded and too suspicious to have been able to help his attorney during his trial and had no ability to realize the importance of communicating his feelings and thoughts to his attorney.

Upon an analysis of the totality of the findings and opinions of the three psychiatrists and one psychologist who have studied the petitioner regarding his competency, a marked and substantial consensus appears. They all stated that the petitioner felt threatened and was overly cautious and guarded. None stat-

ed any doubt of the petitioner's veracity in actions and words, and the three psychiatrists agree that this petitioner was not competent, under the guidelines recognized by the United States Supreme Court, to stand trial in 1967.

Although the petitioner's trial attorney was not a psychiatric expert, his testimony is considered now because it relates closely to that given by the doctors. Farley Young, the petitioner's trial attorney, now deceased, did testify at the 1973 post-conviction hearing. The thrust of his testimony was that although the attorney was able to elicit some information from the petitioner about the events preceding the homicide, he was never able to obtain any information surrounding the actual assault. He stated that it was very difficult to get anything out of the petitioner.

Based upon all the evidence before me, I conclude that the hearing or hearings given by the state court were not full, fair or adequate on the subject of Blackwell's competency to stand trial in 1967, that the material facts on that subject were not adequately developed by the state court, and that convincing evidence shows that Blackwell was not competent in October and November of 1967 to stand trial. He did not have sufficient ability to consult with his attorney with a reasonable degree of rational understanding and did not have sufficient rational as well as factual understanding of the proceedings against him to meet the requisites of due process of law. The writ of habeas corpus will therefore be granted on this ground.

Turning to the remaining issues in this case, those lettered (a), (c) and (d) above, I find that they are insufficient to require the granting of a writ of habeas corpus. The seating of the petitioner at a separate table from his counsel did not unduly prejudice either his right to a due process hearing or his right to be represented by counsel. No evidence has been presented which would indicate that communica-

tion between the petitioner and his counsel was ever prevented by the seating arrangement. Likewise, the trial court's decision not to order a mistrial after the petitioner's verbal outbursts or to admonish or instruct the jury with regard to those outbursts did not deprive the petitioner of any of his constitutional rights.

The gratitude of this court is extended to Charles E. Wright, the petitioner's court-appointed counsel, for his exemplary service to the petitioner in this matter.