STATE OF NEBRASKA, APPELLEE, V. EARL WALDO LACY, APPELLANT.

237 N. W. 2d 650

Filed January 22, 1976. No. 40174.

Keith N. Bystrom and Leonard P. Vyhnalek, for appellant.

Paul L. Douglas, Attorney General, and Steven C. Smith, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BRODKEY, J.
Earl Waldo Lacy appeals from a jury verdict finding him guilty of robbery as defined in section 28-414, R. R. S. 1943, and from the court's sentence of not less than 5 nor more than 8 years in the Nebraska Penal and Correctional Complex. The appellant contends that the evidence does not support the verdict and that the court abused its discretion in sentencing in view of the fact that Lacy's alleged accomplice, Wordie Wright,

Jr., received a 3-year term after pleading guilty. We affirm.

On November 1, 1974, an over-the-road truck driver, Earl J. Bartron, stopped at the I-80 reststop east of Sutherland. On his way into the restrooms, he observed a Thunderbird automobile parked with a person whom he identified as Lacy sitting in the front passenger seat. According to the victim, he met Wordie Wright, Jr., as he, Bartron, was entering the building. While he was in the restroom, he heard the door open again. Lacy and Wright were waiting when Bartron emerged from the stall. Bartron further testified that Wright had a gun, which he identified at trial, prevented Bartron from leaving, and asked Lacy if they should "kill him." Wright asked Bartron for money and he turned the cash in his wallet over to Wright. He did not know how much money was in the wallet. Wright allegedly told Bartron to get in a stall and stay there. Bartron did so and thought that he heard one person leave the building; and after another warning from Wright and a time elapse of perhaps 3 to 4 minutes, he heard a second person leave. Perhaps 15 minutes later, he left and told his partner, who was sleeping in the truck, about the robbery which they reported on a citizen's band radio.

Wright and Lacy were apprehended by a Nebraska State Patrol officer while traveling west on the Interstate Highway. The Thunderbird fit the officer's radio report description of the suspects. He clocked the car driven by Lacy at speeds exceeding 100 m.p.h. During his pursuit he noticed the passenger, Wright, take a black bag from the front seat and put it into the back of the car. After the car was stopped and the two arrested, the gun which Bartron identified as the robbery weapon was found in the bag. This gun had some distinctive characteristics - the bluing was off and it was slightly rusted.

Lacy testified in his own defense, and also called

Wright, who had pleaded guilty to robbery, as a witness. Both testified that they had stopped on their journey to California to rest the car and themselves. Wright said that he took Lacy's gun to the restroom and robbed Bartron. He testified that he kept the $15 Bartron gave him and that Lacy came to the restroom door after Wright robbed Bartron. According to Wright, an exchange occurred in which Lacy asked what was taking so long. Wright replied "nothing," and Lacy left, saying he would be in the car.

Lacy testified that he woke up in the car, went into the restroom, and saw Wright with the gun held to Bartron's head. Wright then allegedly told Lacy to get out. Lacy stated he then left and tried to start the car in order to leave Wright behind. The car stalled and Wright returned to the car, which Lacy then drove onto the highway.

The evidence against Lacy was mainly direct testimony by Bartron about Lacy's involvement in the crime. Lacy and Wright contradicted this testimony. The rule is that: "In determining the sufficiency of evidence to sustain a conviction in a criminal prosecution, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the jury." State v. Spidell, 194 Neb. 494, 233 N. W. 2d 900 (1975). After hearing all the evidence, including testimony by Lacy and Wright that they had less than $10 between them when they reached the reststop, and that Wright had produced $15 from his trouser waistband after he was arrested, the jury chose to believe Bartron. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the State, to support it. State v. Fowler, 193 Neb. 420, 227 N. W. 2d 589 (1975).

The testimony indicated that Lacy did not use the gun to threaten Bartron, nor did he have possession of the money taken from Bartron. The court gave the

jury the Nebraska Jury Instruction on aiding and abetting. Under this instruction if found guilty of aiding and abetting, Lacy could be punished as if he were the principal offender. There is ample evidence to show that the actual robbery was committed by Wright who was engaged with the defendant in a common, concerted unlawful act. NJI No. 14.12. Common purpose to commit a crime may be inferred from the circumstances surrounding the act and from the defendant's subsequent conduct. Miller v. State, 173 Neb. 268, 113 N. W. 2d 118 (1962).

Of course, silence or acquiescence is not enough to make one an accomplice, but the evidence here presented was sufficient to permit the jury to find conscious participation or sharing in the criminal act involved. State v. Alvarez, 189 Neb. 276, 202 N. W. 2d 600 (1972).

Lacy next claims that the disparity between Wright's 3-year sentence and his 5-year sentence, in addition to comments by the trial judge, indicate that the court penalized Lacy for not pleading guilty, which constituted an abuse of discretion on its part. At sentencing, the judge made the following remarks: "* * * the sentence that was passed against your co-defendant, Wordie Wright, was entered as a result of a plea bargain and he was given special consideration in that he entered a plea of guilty. Now, I'll give you a fair consideration, but you don't get any special consideration because you are not entitled to that. This was as a result of a plea bargain."

In State v. Shonkwiler, 187 Neb. 747, 194 N. W. 2d 172 (1972), this court noted that: "* * * where two or more defendants are convicted for the same offense and different penalties are inflicted, and it appears from the evidence that the defendant receiving the least punishment is at least equally guilty, it may be necessary for this court to examine the evidence to determine whether there were justifiable reasons for the distinctions." In Shonkwiler, both defendants pleaded guilty and the one

with a more lengthy criminal record received probation, while Shonkwiler was sentenced to imprisonment evidently due to his remarks about the Vietnam War and his claim of conscientious objection.

Here Wright pleaded guilty and Lacy chose to go to trial on the charge. It is true that a more severe punishment cannot be exacted in order to punish a convicted person for exercising his right to trial. Hess v. United States, 496 F. 2d 936 (8th Cir., 1974); Scott v. United States, 419 F. 2d 264 (D.C. Cir., 1969).

However, sentence concessions are proper when a defendant pleads guilty to an offense. A.B.A. Standards Relating to Pleas of Guilty, § 1.8. The fact that Wright apparently received consideration as to his sentence as a result of his plea of guilty in no way requires a conclusion that Lacy was penalized for exercising his constitutional rights.

The bill of exceptions contains no information relative to Wright's previous criminal record. It may be that his record was less serious than that of Lacy, who had previously been charged in Michigan with felonious assault with a gun and had a history of emotional nervous instability. The sentence of 5 to 8 years is close to the statutory minimum, and no abuse of discretion appears.

Although what we have stated above is more than sufficient to dispose of this case on the merits, there appears to be an additional cogent reason for affirming the judgment and sentence of the District Court. We refer to the contention raised by the State in its brief and on oral argument on appeal that Lacy failed to file his motion for a new trial within the time provided by statute. The applicable statute is section 29-2103, R. R. S. 1943, which provides, so far as material herein, as follows: "The application for a new trial shall be by motion upon grounds, and may be filed either within or without the term at which the verdict is rendered. It shall, except for the cause of newly discovered evi-

dence material for the party applying, which he could not with reasonable diligence have discovered and produced at the trial, be filed *within ten days after the verdict was rendered* unless unavoidably prevented." (Emphasis supplied.)

The record in this case reveals that Lacy did not file his motion for a new trial within 10 days from the date of the verdict, but did file it within 10 days from the date of his sentencing. The statute appears to be clear and unambiguous with regard to the time requirements for filing a motion for a new trial, and has been adhered to, almost without exception, to the present date. See State v. Seger, 191 Neb. 760, 217 N. W. 2d 828 (1974). However, an element of ambiguity was introduced into the rule in the case of Stanosheck v. State, 168 Neb. 43, 95 N. W. 2d 197 (1959). In syllabus 1 of that case, the statement is made that a motion for a new trial in a criminal action must be filed "within 10 days after the verdict *or judgment* is rendered in order to be considered on appeal, * * *." (Emphasis supplied.) The additional words "or judgment" are, however, not contained in the opinion itself, which merely quotes the exact language of section 29-2103, R. R. S. 1943. The error was repeated in Vacek v. Marburger, 188 Neb. 180, 183, 195 N. W. 2d 515, 517 (1972), where this court obviously copied verbatim syllabus 1 of Stanosheck v. State, *supra,* to the effect that "a motion for a new trial in a criminal action must be filed within 10 days after the verdict or *judgment* is rendered * * *." In order to clarify the matter and to alleviate any possible future confusion upon the question, we now specifically state that the time requirements of section 29-2103, R. R. S. 1943, are mandatory and that a motion for a new trial under that section must be filed within 10 days after the *verdict* is rendered. It may not be filed within 10 days after the date of sentencing, unless, of course, the verdict and sentencing occur on the same day.

Our conclusion on the merits is that there is ample evidence in the record to sustain the conviction on the charge of robbery in the lower court, and that the sentence imposed upon the defendant was in all respects in conformity with law, and not excessive.

AFFIRMED.