**Lee A. BEANS, Petitioner,**

v.

**Charles BLACK, Warden, Nebraska State Penitentiary, Respondent.**

**No. CV83–L–97.**

United States District Court, D. Nebraska.

March 9, 1984.

On Motion to Amend April 9, 1984.

John Tarrell, Kearney, Neb., for petitioner.

Harold Mosher, Asst. Atty. Gen., Lincoln, Neb., for respondent.

## MEMORANDUM OF DECISION

URBOM, Chief Judge.

Lee A. Beans' petition for a writ of habeas corpus raises, inter alia, the difficult issue of the extent of a defense counsel's duty to a client who has been declared competent to stand trial and who appears determined to plead guilty against his attorney's advice. While I retain a substantial doubt about whether the disposition of the petitioner's case in the state courts accurately reflects the proper level of his culpability for the slaying of his wife in 1976, I must conclude, within the limits set by 28 U.S.C. sec. 2254, that the petitioner has received all of the process due to him and that his incarceration is not the result of ineffective assistance of counsel.

■ The review available in a federal habeas corpus proceeding is limited by sec. 2254(d). The federal courts must defer to findings of basic, primary, or historical fact made by the state court, unless the state fact-finding procedure is found to be deficient in one of the ways set out in sec. 2254(d)(1–7), the record from the state court does not fairly support the state findings, sec. 2254(d)(8), or new evidence presented to the federal court establishes by convincing evidence that the factual determination made by the state court was erroneous. *See Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981), and 455 U.S. 591, 102 S.Ct. 1303, 71 L.Ed.2d 480 (1982). Such deference is due even in the absence of an express finding of fact accepting or rejecting particular evidence, where the state court follows the proper legal standard and makes a legal ruling which is inconsistent with an opposite view of that evidence. *Marshall v. Lonberger,* 459 U.S. 422, 430, 103 S.Ct. 843, 848, 74 L.Ed.2d 646 (1983).

The Nebraska Supreme Court set out the facts of the case, as it found them, in some detail in *State v. Beans,* 212 Neb. 31, 321 N.W.2d 72 (1982). See also, 199 Neb. 807, 261 N.W.2d 749. To the extent that the state court's narrative represents facts, as opposed to questions of law or mixed fact and law, I am bound to follow it. I have previously denied the petitioner's request for an evidentiary hearing, because he failed to specify what new evidence he needed to present. An examination of the record fails to disclose any of the section 2254(d) deficiencies in the state fact-finding process, and each of the relevant facts appears to be fairly supported by the record,

although it may be possible to find support in the record for contrary findings. Because of this I will not reproduce here the facts of the case as described in *State v. Beans.*

The petitioner's claims concern his mental competency at the time he pled guilty to first degree murder and the effectiveness of his appointed counsel in representing him during the course of the state criminal proceedings.

[redacted] A court may not accept a guilty plea from a person who is mentally incapable of understanding the nature of the charge against him or the rights waived by the plea without violating that person's right to due process, and a criminal defendant may not waive his procedural rights for determining competency. *Pate v. Robinson,* 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). *Robinson* illustrates one method for challenging a conviction of an incompetent defendant: Where a substantial doubt as to competency is raised either before or at trial, the trial court must resolve the doubt before proceeding. The fact that the judge ordered a psychiatric evaluation may be enough to establish such a doubt under *Robinson. See Brizendine v. Swenson,* 302 F.Supp. 1011, 1019 (W.D. Mo.1969). Even though the resulting report indicates competency to stand trial, the trial judge should give the defendant an opportunity to challenge the report and to present evidence to the contrary. *See Speedy v. Wyrick,* 702 F.2d 723 (8th Cir. 1983); *cf. Floyd v. United States,* 365 F.2d 368 (5th Cir.1966) (section 2255 proceeding). *But cf. State v. Anderson,* 186 Neb. 435, 183 N.W.2d 766 (1971) (no need for hearing if report indicates competency and nothing to contrary appears). Where a *Robinson* hearing is not held to resolve a substantial doubt as to competency, the federal court need not try to determine retroactively whether the defendant was in fact incompetent at the time of trial, because of the difficulty of doing so at such a late date.

[redacted] An alternative to the *Robinson* approach is for the defendant to undertake the heavy burden of proving actual incompetency at the critical time. *Johnson v. Estelle,* 704 F.2d 232, 238 (5th Cir.1983); *Blackwell v. Wolff,* 403 F.Supp. 759 (D.Neb.), *aff'd,* 526 F.2d 1142 (8th Cir. 1975).

Neither approach is helpful to the petitioner here. The trial court committed the petitioner to the Lincoln Regional Center for evaluation of his competency to stand trial on three separate occasions, and even rejected an earlier guilty plea in order to obtain further testing. The same doctors who had questioned his competency in earlier reports to the court reported in December 1976 that the petitioner's condition had improved enough that he could cooperate with his counsel. The trial judge accepted the report into evidence without objection and gave the petitioner a chance to be heard. When no evidence was forthcoming, other than defense counsel's bare assertion that he believed his client to be incompetent, the judge found the petitioner to be competent. The judge noted that even counsel's statement did not contradict the psychiatric report, because counsel had explained that his client was refusing to cooperate in his defense, not that he was incapable of cooperating. Unlike *Drope v. Missouri,* 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103, nothing in the record shows that the petitioner's later behavior should have put the judge on notice that the petitioner was not competent at the time of the arraignment or the factual basis hearing or the sentencing, such that a new evaluation or hearing would be necessary.

[redacted] As for actual incompetency, everything before this court was before the state court in the post-conviction proceedings, including Dr. James Cole's criticism of the December 1976 report. The state supreme court chose to rely upon the opinion of the psychiatrists and psychologists at the Regional Center, who had been examining the petitioner for over half a year, ratner than that of Dr. Cole, a psychologist who had never examined the petitioner and who based his opinion on incomplete records. Impliedly, the state courts also rejected the lay opinion of Terry Dowling, who had

visited the petitioner during the critical period. This determination of competency by the state court is a finding of fact entitled to deference under section 2254(d). *White Hawk v. Solem,* 693 F.2d 825, 829 (8th Cir.1982), *cert. denied,* 460 U.S. 1054, 103 S.Ct. 1505, 75 L.Ed.2d 934 (1983). It is fairly supported by the record, and nothing new has been presented to show it to be erroneous.

■ Neither is there any ground for finding a constitutional violation with respect to other aspects of the requirement that a guilty plea be voluntarily, intelligently and knowingly made. The state court found that the defense counsel advised the petitioner of the nature of the charge, the element of intent to kill or to do bodily harm, and the possible defense of self defense, as well as other defenses. The record shows that the trial judge informed the petitioner of the nature of the charge and its elements and determined that he understood both the rights he was waiving by pleading guilty and the consequences of doing so. This was adequate to satisfy due process. *See Wabasha v. Solem,* 694 F.2d 155 (8th Cir.1982).

■ The trial judge found that the evidence adduced at the factual basis hearing supported the plea to first degree murder. The judge hinted, and I tend to agree, that the evidence also would have supported lesser degrees of homicide, or even self defense. However, the establishment of a factual basis for a guilty plea is not a requirement of due process. *Wabasha v. Solem, supra; White Hawk v. Solem, supra.* A factual basis is required constitutionally only if the guilty plea is accompanied by a protestation of innocence. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Here the petitioner proclaimed his guilt without reservation. A guilty plea made by a competent person is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* at 31, 91 S.Ct. at 164.

■ The Sixth Amendment claim has various aspects. One contention concerns the alleged failure of the defense counsel, Gary Giese, to investigate the facts of the shooting or to interview the four eyewitness or other potential witnesses for the prosecution. The state court found that the investigation was adequate under the circumstances, but this is a mixed question of fact and law not subject to section 2254(d). *See McQueen v. Swenson,* 498 F.2d 207 (8th Cir.1974). However, even assuming that counsel's inactivity in this regard violated the duty to investigate established by *McQueen,* the second prong of the federal test, that the substandard performance materially prejudiced the defense, is not established. Unlike the situations in *Hawkman v. Parratt,* 661 F.2d 1161 (8th Cir.1981), and *Morrow v. Parratt,* 574 F.2d 411 (8th Cir.1978), the defense attorney here did not advise his client to plead guilty. Rather, as the state court found, he advised him to plead not guilty and even objected to entry of the guilty plea. The state court found, and the record shows, that the defendant refused to cooperate with counsel and arrived at the decision to plead guilty on his own. Prejudice in the cases named above existed because an investigation would have uncovered information or evidence helpful to the defense which might have induced counsel to advise his client differently. Here counsel already was advising against a guilty plea, and there appears to have been nothing not already known to counsel or the petitioner which would have been so significant as to have an effect on the petitioner's resolve to plead guilty.

■ Similarly, defense counsel's failure to pursue plea negotiations past an initial rejection by the prosecutor was not prejudicial to the petitioner. The state court found that the petitioner rejected the possibility of a plea bargain and continued to insist upon pleading guilty to first degree murder. There is fair support in the record for this finding.

An overtone in the petitioner's argument is that he refused to cooperate with his

appointed counsel because of frustration over what he saw as his counsel's failure to do anything to prepare a defense or to get him out of the Regional Center, and because counsel lied to him about why he was being kept at the Center. The petitioner told the judge at his final arraignment that his attorney had lied to him, and there is some evidence that an earlier attempt to ask the judge to remove Giese as defense counsel was thwarted, but the petitioner told the judge at the final arraignment that he was satisfied with the legal advice he had received. The state court impliedly rejected the foregoing as a basis for an involuntary plea, and I see little in the record to warrant further examination.

The petitioner testified at his post-conviction hearing that his attorney never discussed with him the elements of the charge or the possibility of a lesser charge or the availability of defenses. However, Giese testified to the contrary, and the state court believed Giese. Even so, the petitioner was adequately notified of the nature of the charge he was admitting by means of the information and the trial judge's discussion of the elements of the offense at the final arraignment.

A more complex aspect of the Sixth Amendment claim is that involving defense counsel's effectiveness regarding the competency question. At the October 6, 1976, competency hearing, after a report was received from the Lincoln Regional Center saying that the petitioner was still mentally incompetent, Giese told the court that his client wanted an evaluation by a second psychiatrist. The judge refused to order another evaluation, other than that to be done at the Regional Center, but told Giese that the court would cooperate if he wanted to obtain an independent evaluation on his own. Another competency hearing was held December 23, 1976, at which the prosecution introduced a report from the Regional Center stating that a team of two psychiatrists and two psychologists found that the petitioner now was capable of standing trial and cooperating with his at-

torney. Giese made three statements in response: He said that his client had no objection to the report, he objected to the portion of the report containing statements made by the petitioner about the shooting, and he stated that he believed that his client was incompetent to stand trial because he was refusing to participate in his own defense "for various reasons which will come out at a later hearing, I believe." Giese did not offer any evidence to rebut the conclusion drawn by the Regional Center team, nor did he ever obtain an independent evaluation. The transcripts of later hearings do not explain what the "various reasons" were. The petitioner pled guilty December 27, 1976. At the close of that hearing, Giese told the court that the plea was against the advice of counsel and that he would explain at the next hearing. Giese did not address the competency question at the next hearing, held January 4 and 5, 1977, to establish a factual basis for the plea, but he did vigorously cross-examine the state's witnesses. Giese did not present any evidence, saying that Beans had consistently refused to cooperate, had no desire to defend himself, and did not want to take the stand. At the January 20, 1977, sentencing hearing, Giese called a witness to attempt to establish mitigating circumstances.

 To establish a claim for ineffective assistance of counsel, the petitioner must show, first, that his attorney failed to exercise the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances, and, second, that such actions or inactions of his attorney materially prejudiced the defense. *Morrow v. Parratt*, 574 F.2d 411, 412–13 (8th Cir.1978).

 I tend to agree with the petitioner's position that where a defense attorney believes that his client is incompetent to stand trial, even after a psychiatrist has issued an opinion to the contrary, the attorney has a duty to investigate the issue further, whether that means to obtain a

review of the original opinion or to obtain an independent evaluation of his client's current mental state. The same duty would exist where the defendant's mental condition appears to deteriorate after the competency hearing such that a doubt exists about his competency at the time of arraignment or trial. Also, it is not reasonable for counsel to follow his client's instructions as to bypassing a critical objection if counsel believes, or has reason to believe, that his client is mentally incompetent. However, this duty did not arise in the present case. Giese testified at the post-conviction hearing that he believed at the time of competency hearing that Beans was competent to stand trial. He explained that he argued incompetence to the judge only because Beans was refusing to cooperate. This is consistent with Giese's statement on December 23, 1976, as shown in the hearing transcript. Giese also testified that he did not observe any change in his client's condition during the course of the December 1976 and January 1977 hearings. While the state courts did not pass on the weight to be given Giese's testimony on this subject compared with that due the petitioner's testimony and that of Terry Dowling to the effect that the petitioner was incompetent during this period, my own examination of the record favors Giese's version. Giese had the opportunity to observe his client over the span of several months, both in the early phase of the process when all concerned agreed that Beans was incompetent, and throughout the final series of hearings. Absent any inconsistent behavior on the part of Beans, it was not unreasonable for Giese to believe the opinion of the Regional Center doctors. Giese's observation that Beans' condition did not change after the final competency hearing is bolstered by the testimony of Deputy Sheriff Glen Schleve, who saw Beans at the Buffalo County jail several times a week from December 20, 1976, to January 20, 1977, that he was "pretty well depressed" but that his condi-

tion did not change and was better than the previous May. The Regional Center team which found him competent to stand trial had also said Beans was still depressed, but had improved. Dowling also saw him during this period, but his bare conclusion that Beans was incompetent to stand trial was not backed up with the specific observations at the base of that lay opinion. Thus, I conclude that Giese did not act unreasonably when he did not challenge the competency ruling.

Even if Giese had performed inadequately in failing to investigate his client's competency during the final series of hearings, the petitioner has failed to show that there was anything helpful to the defense which Giese might have found. There is nothing in the record to raise a substantial doubt that Beans actually was incompetent during December 1976 or January 1977; therefore, there is no reason to believe that a second opinion would have been different than the first. Also, assuming that Giese could have obtained Dr. Cole's review of the Regional Center's report and used it at the December competency hearing, the Cole report would not have carried the day, as shown by the trial judge's rejection of it during the post-conviction proceeding in favor of the more credible Regional Center opinion.

The state court found that after the January 20, 1977, sentencing hearing—contrary to Beans' testimony that it happened on January 4, but consistent with Giese's testimony—Beans signed a "Notice of Intent Not to Appeal" which absolved Giese and the Public Defender's office of further responsibility for representing Beans. Giese testified that he believed at the time that Beans actually intended not to appeal, but that he came to believe later that Beans wanted another attorney to file an appeal. Giese testified that he had advised Beans about his appeal rights and the deadlines for doing so. On January 27, 1977, Beans did file a notice of appeal, and the

court appointed John Tarrell to represent him. No motion for a new trial was filed, although some time remained for doing so, and the Nebraska Supreme Court rejected the appeal because of the lack of a motion for new trial. Given these circumstances, I do not perceive any inadequacy on Giese's part, either in not filing a motion for new trial himself or in preventing Beans from doing so. Giese's only remaining responsibility to his client, who he still believed to be competent, was to advise him of his appeal rights, which he did, and to break off the relationship when Beans told him to. Assuming that Tarrell was derelict in pursuing a doomed appeal without filing a motion for new trial, nothing in the record shows that Beans would have been entitled to withdraw his guilty plea at that late date had a motion been filed. *See State v. Holtan*, 216 Neb. 594, 344 N.W.2d 661 (1984).

## ON MOTION TO AMEND

Upon consideration of the petitioner's motion to amend the court's findings of fact and conclusions of law or for new trial, filing 20, I conclude that I shall stand by my denial of the petition for writ of habeas corpus but shall make some amendment of the memorandum of decision.

█ In my memorandum of March 9 I treated January 20, 1977, as the date from which the ten-day period for filing a motion for new trial began to run. See § 29-2103, R.R.S.Neb. (Reissue 1979). After noting that the petitioner had discharged his trial counsel on January 20 and that new counsel was appointed on January 27—the day that the petitioner filed a pro se notice of appeal—I stated that the newly appointed attorney still had time in which to file a motion for new trial, thereby preserving for appeal the issues which the Supreme Court of Nebraska later refused to review because of the failure to file a motion for new trial. This was not correct. Nebraska law consistently has held that a motion for new trial must be filed within ten days after the verdict, not after the sentencing. *State v. Lacy*, 195 Neb. 299, 237 N.W.2d 650 (1976). The verdict in this case was rendered on January 5 and the sentencing occurred on January 20. Therefore, by the time Mr. Tarrell was appointed, any meaningful direct appeal already had been lost.

However, this does not change the outcome of this case. The petitioner remained adamant throughout the course of his relationship with Mr. Giese—the attorney originally appointed to represent him—that he intended to plead guilty and did not intend to appeal. It is unclear just when Giese advised the petitioner of his appeal rights, but on January 20 the petitioner discharged Giese and signed a notice of intention not to appeal. This is strong evidence that the petitioner would have made the same decision five or more days earlier—before the time for moving for a new trial had expired. It is clear that Giese was following his client's wishes when he let the ten days elapse without filing a motion for new trial. He had no duty under the Constitution to do otherwise, in light of the state courts' finding that the petitioner was competent throughout this period and my finding that nothing in the record is sufficient to overturn that finding.

Additionally, even if Giese had violated some duty to the petitioner by not filing a timely motion for new trial, I have no reason to change my earlier finding that nothing in the record shows that the petitioner would have been entitled to withdraw his guilty plea had a timely motion been filed.

IT THEREFORE IS ORDERED that, except as otherwise reflected in this memorandum, the petitioner's motion, filing 20, is denied.