STATE OF NEBRASKA, APPELLEE, v. RUDOLPH KLATT, APPELLANT.

188 N. W. 2d 821

Filed July 23, 1971. No. 37850.

Thomas L. Anderson and Leo F. Clinch, for appellant.

Clarence A. H. Meyer, Attorney General, and Betsy G. Berger, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

McCOWN, J.

The defendant, Rudolph Klatt, was charged with murder in the first degree. He waived trial by jury and the case was tried to the court. He was found guilty of murder in the second degree and sentenced to life imprisonment. All issues on appeal involve factual and legal determinations as to the defendant's sanity. We affirm the conviction and sentence.

Some background facts, as well as a summary of the expert testimony on the issue of sanity, may be useful. On Saturday evening, April 29, 1967, at about 10 p.m., the defendant and his favorite half-brother had engaged in a public altercation and scuffle outside a tavern in Anselmo, Nebraska. The defendant left the scene of the scuffle and went to Broken Bow with a woman companion. The half-brother and his wife returned to their rural home near Anselmo and went to bed. They were awakened at about 5 a.m. the next morning by the defendant knocking on their door. Both the half-brother and his wife went to the door. The defendant had a shotgun with him. The brothers engaged in a brief conversation. The defendant started to walk away, then turned and shot his half-brother and killed him. He was arrested some 4 or 5 hours later while eating breakfast in a restaurant in a nearby village.

The evidence was extremely contradictory as to the

extent of the defendant's drinking and intoxication during the entire weekend in which the shooting occurred. The only witness who testified that the defendant was intoxicated at any time close to the time of the murder was his woman companion, who testified at the trial that he was intoxicated at 2 a.m. the morning of the shooting. Several witnesses testified as to the defendant's activities on the evening before, or from the time of the actual shooting to the time of his arrest a few hours later. All of them testified that the defendant did not appear to be intoxicated.

The defendant had been in and out of mental hospitals on several occasions between early 1963 and the fall of 1966. Most of these occasions involved alcoholism. On at least some of the occasions, the doctors noted either schizophrenic tendencies or a paranoid state.

The record of criminal proceedings involving the defendant spanning the period from the spring of 1963 to November of 1966, reveals charges varying from menacing threat, to shooting with intent to kill, interspersed with intoxication, and driving offenses involving intoxication or suspension of driver's license.

Following the defendant's arrest on the morning of April 30, 1967, he was charged with first degree murder. On May 5, 1967, a preliminary hearing was held at which time the defendant was represented by counsel employed by him. He was bound over to the district court and on May 11, 1967, he was arraigned in the district court with his attorney present. The defendant stood mute and the court entered a plea of not guilty. In August of 1967, upon applications both by the defendant and by the State, the court ordered the defendant transferred to Omaha, Nebraska, for psychiatric examination. In Omaha, he was examined by Dr. J. Whitney Kelley and Dr. William F. Giles, psychiatrists; and Dr. Donald Fauth, a psychologist, conducted certain psychological testing.

On October 24, 1967, following the reports of the psy-

chiatrists and their answers to interrogatories submitted by the court, the district court entered an order finding that the defendant was presently incompetent and incapable of standing trial for the charge of murder. The court ordered that further proceedings be deferred and committed the defendant to the State Hospital in Lincoln, Nebraska.

On October 28, 1969, after more than 2 years treatment in the Lincoln State Hospital, two psychiatrists, one of them the acting clinical director of the hospital, advised the district court that the symptoms of whatever psychosis the defendant showed at the time of admission had been in remission for at least 12 months. In answer to specific interrogatories, the two psychiatrists by affidavit certified that the defendant understood the nature and object of the proceedings against him and the possible sentences if convicted. They also certified that he was mentally competent to consult and confer with and aid counsel in a reasonable and rational manner in preparation for trial and at the trial itself. Counsel for the defendant was appointed on October 31, 1969. On December 30, 1969, the district court set March 10, 1970, as the trial date, and ordered the defendant transferred to the Penal and Correctional Complex. On February 13, 1970, the district court granted the request of defendant's counsel to have the defendant transferred to the Hall County jail in Grand Island, Nebraska, for the convenience of counsel in conferring with defendant in preparation for trial. In May 1970, the court overruled pleas in abatement based upon contentions that the defendant's preliminary hearing and arraignment in 1967 were invalid because of the defendant's alleged mental incompetence at that time. A motion for a change of venue was also overruled and thereafter the defendant waived the right to a jury trial. After continuances, the case ultimately was tried to the court without a jury commencing on July 27, 1970, and concluding July 31, 1970.

There was no question but that the defendant shot and killed his half-brother. The only real issues involve his legal responsibility for that act and his mental competence to stand trial. Therefore, we must briefly review the testimony with respect to the defendant's mental condition. Dr. Kelley and Dr. Giles, the psychiatrists who had examined the defendant in September of 1967, testified for the defendant. Based upon the results of Dr. Fauth's psychological testing and their own examinations, they were both of the opinion that the defendant was a chronic paranoid schizophrenic. In their opinions also, he was unable to distinguish between right and wrong at the time of the homicide and was not legally responsible for his acts because of mental illness. They also both felt that drinking would aggravate his condition and that his chances of cure were rather remote. Neither of them had seen the defendant between the time of their examinations in September of 1967 and the time of trial in July of 1970, although they had reviewed his hospital and testing records. Dr. Giles testified that he had not reexamined the defendant, did not have knowledge of his current condition, and, therefore, could give no opinion as to how he was at the time of trial.

Dr. Leonard Woytassek, clinical director of the Lincoln State Hospital, testified for the State. It should be noted here that Dr. Woytassek had first examined the defendant in September of 1965, when the defendant had been committed to the hospital for treatment. At that time, Dr. Woytassek determined that during drinking episodes, the defendant might develop periods of psychosis but that he was not generally psychotic at that time. Dr. Woytassek also had supervised the defendant's treatment for more than 2 years following the commitment in the fall of 1967. He testified that the conclusion of the hospital staff in February 1968, was that the defendant was suffering from a schizophrenic reaction, paranoid type, at that time. He classified the

defendant's schizophrenia as mild. He also testified, in response to a hypothetical question which included a fair summary of all of the facts disclosed by the evidence, that in his opinion the defendant was mentally capable of knowing and understanding his actions and of distinguishing between right and wrong on April 30, 1967. Dr. Woytassek agreed that if the defendant had consumed a substantial amount of alcohol, it would interfere with his ability to know right from wrong and his ability to understand what he was doing.

The defendant contends that the preliminary hearing and arraignment in 1967 were invalid. That contention assumes that the court order of October 1967, finding the defendant mentally incompetent to stand trial at that time, was also final and retroactive, and made all prior proceedings invalid. It is also argued that the opinions of the two psychiatrists which formed the foundation for that order conclusively established the defendant's insanity for all purposes, both at the time of the commission of the crime and thereafter.

It is essential at this point to note that mental unsoundness in a person accused of crime may give rise to two entirely distinct legal problems. One involves the responsibility of the defendant to be punished, which is determined under the legal test of responsibility. The other involves the defendant's mental condition, not at the time of the act charged, but at the time of the criminal proceedings—whether he is presently sane enough to plead or be tried. The tests of responsibility—capacity to know right from wrong, are not the tests which are applied in determining competency to plead or stand trial. The test of mental competency to plead or stand trial is whether the defendant has capacity to understand the nature and object of the proceedings against him; to comprehend his own condition in reference to such proceedings and to make a rational defense. See Weihofen, "Mental Disorder as a Criminal Defense," C. 9, pp. 429 to 431.

Under our statutes, a determination of competence to plead or stand trial is made by the court under the provisions of section 29-1823, R. S. Supp., 1969. That procedure was followed here. The section provides in part: "If at any time prior to trial it appears that the accused has become mentally incompetent to stand trial * * *. The judge of the district court * * * shall have the authority to determine whether or not the accused is competent to stand trial. * * * Should he determine after a hearing that the accused is mentally incompetent to stand trial he shall order the accused to be committed to a state hospital for the mentally ill until such time as the disability may be removed."

The effect of that statute is simply to suspend criminal proceedings during the time an accused is determined by the court to be mentally incompetent to stand trial. The statute neither validates nor invalidates any prior proceedings, nor does the determination of incompetency to stand trial operate retroactively. The court clearly has authority to terminate the suspension in its sound discretion by the same method of factual determination. See State v. Anderson, 186 Neb. 435, 183 N. W. 2d 766.

In this case, defendant's counsel in 1970, prior to trial, obtained a complete transcript of the preliminary hearing held in 1967. At the arraignment held in 1967, the defendant stood mute and a plea of not guilty was entered. Under such circumstances, we find no possibility of prejudice to the defendant's rights. It should be noted too that the affidavits of the two psychiatrists from the Lincoln State Hospital in November of 1969, that the defendant was then competent to stand trial stand uncontraverted. Neither was there any affirmative evidence that the defendant was not competent to stand trial nor assist in his own defense in 1970. In the absence of a showing of the invalidity of the psychiatrists' certificates, the court was required to proceed with the trial in the suspended criminal proceedings.

Under the provisions of section 29-1823, R. S. Supp.,

1969, a determination that an accused is mentally incompetent to stand trial is effective as of the date of the determination and operates to suspend criminal proceedings until the disability is removed. It does not invalidate prior proceedings nor constitute a finding or determination that the accused was insane or incompetent to stand trial or assist in his own defense at any prior time. The pleas in abatement were properly overruled.

The vital question in this case is whether or not the State sustained its burden of establishing that the defendant was sane at the time of the commission of the crime. In this state, a defendant in a criminal action is presumed sane until the defendant produces evidence of insanity at the time of the alleged crime. If any evidence is produced, the State must then sustain the burden of producing evidence that the defendant was sane at the time of the crime beyond a reasonable doubt. See Thompson v. State, 159 Neb. 685, 68 N. W. 2d 267.

The verdict of the finder of fact on the issue of insanity will not be disturbed unless there is insufficient evidence to support the findings. See State v. Newson, 183 Neb. 750, 164 N. W. 2d 211. The issue here is whether there was sufficient evidence to support the verdict of the court sitting in place of a jury. The rule in this jurisdiction is that the primary test is the capacity of the defendant to distinguish between right and wrong at the time of the commission of the offense. The testimony of the psychiatrists in this case was directly contradictory on that issue. So was the evidence as to whether or not the defendant was intoxicated. The testimony of witnesses to the crime itself, as well as to the defendant's appearance and conduct before and after the actual time of the murder, gave the court, sitting as a jury, the opportunity to relate that testimony to the experts' testimony that was given in the case. The question of whether the legal sanity of the accused has been established beyond a reasonable doubt at trial

is one of fact to be determined by the trial court when a jury has been waived. Where there is substantial evidence to sustain the finding of the trial court on that issue, that determination will not be disturbed on appeal. See State v. Newson, *supra*.

The defendant also contends that his motion for a change of venue was improperly denied, and it is asserted that the defendant waived a jury trial as a result of the denial of that motion. The evidence was not convincing that the defendant was unable to obtain a fair trial in Custer County. It should be noted also that trial was finally held more than 3 years after the crime was committed. In any event, the defendant waived a jury trial, and under those circumstances, a refusal to grant a change of venue would not be prejudicial. A motion for a change of venue in a criminal case is addressed to the sound discretion of the trial court and its ruling will not be disturbed unless a clear abuse of such discretion is shown. State v. Losieau, 174 Neb. 320, 117 N. W. 2d 775.

The remaining assignments of error are without merit. The judgment of the district court is affirmed.

AFFIRMED.