STATE OF NEBRASKA, APPELLEE, v. SETH E. BLACKWELL, SR., APPELLANT.

214 N. W. 2d 264

Filed January 18, 1974. No. 39144.

Charles E. Wright, for appellant.

Clarence A. H. Meyer, Attorney General, and Chauncey C. Sheldon, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

Seth E. Blackwell moved the District Court for post conviction relief on two grounds. First, at the time of the jury trial that led to his conviction and sentence he was mentally incompetent to stand trial. Second, isolation and restraint imposed upon him during the jury trial violated Article I, sections 3 and 11, of the Nebraska Constitution, Bill of Rights, and the Sixth and Fourteenth Amendments to the Constitution of the United States. After an evidentiary hearing the court overruled the motion, and Blackwell appeals.

The District Court might properly find as follows. During the period of 1½ months immediately prior to the jury trial the behavior of Blackwell was extraordinary. He removed his handcuffs by his own strength,

barricaded his cell, destroyed "everything in the room," and assaulted his lawyer. He was gassed severely with tear gas.

At the jury trial and upon request of defense counsel, Blackwell was seated 5 feet away from the counsel table, 3 feet away from the second chair, and between two deputy sheriffs. The request was made because of the tendency in Blackwell for belligerence. Blackwell in conversation with counsel dissented mildly. Two outbursts by him disrupted the trial. He possessed the opportunity to communicate effectively with his counsel by notifying a deputy sheriff that he wished to speak with counsel. Such notice was conveyed on several occasions. Defense counsel at no time was denied the right to converse with Blackwell during the trial, and they conversed several times. In respect to the seating arrangement no cautionary instruction was given to the jury. The evidence was sufficient to sustain the findings under review in respect to the seating arrangement and the opportunity for effective client-counsel communication beneficial to Blackwell.

In the absence of a violation of a constitutional right, no relief may be had under the Post Conviction Act. State v. Whited, 187 Neb. 592, 193 N. W. 2d 268 (1971).

The order denying the post conviction motion was correct.

AFFIRMED.

Adopted by the Court before January 1, 1974.

McCOWN, J., dissenting.

Our original opinion in this case specifically held that the defendant was competent to stand trial. That opinion, as well as the current majority opinion, rests upon a failure to distinguish between two different legal tests of mental competency in a criminal case. One involves the responsibility of the defendant to be punished, which is determined under the legal test of responsibility. The other involves the mental com-

petence of the defendant to stand trial. The latter requires that the defendant be competent to make a rational defense and that necessarily includes the ability to assist in his own defense. Courts have uniformly adhered to the two standards. See State v. Klatt, 187 Neb. 274, 188 N. W. 2d 821.

The only expert witness who examined the defendant prior to trial made his examination on or before September 26, 1967. A letter bearing that date gave the doctor's opinion that: "Mr. Blackwell had a Ganser reaction and this syndrome is an acute halucinatory mania, a reaction due either to the confinement in jail or to his fear of his own future. It is further my opinion that he is mentally competent and that he is able to make a plea to the Court."

One week after that opinion was given, the defendant attacked his court-appointed counsel during a consultation and injured him, and one week after that the defendant tried to hang himself. The record does not show that these facts were given to any expert witness or to the court in 1967. Instead, they were brought out at this post conviction hearing. The trial began less than three weeks after the hanging attempt and the defendant's counsel was forced to request that the defendant be seated away from the counsel table. There were motions for mistrial on at least two occasions following disruptions by the defendant at the original trial.

A post-trial testing of competency was ordered by the court and once again there was a wholesale misunderstanding as to the tests or measures of mental competence to be applied. The clinical psychologist noted that the defendant "may develop transient psychotic episodes." Dr. Woytassek, who examined the defendant approximately one month after trial found the defendant "has known and does know the nature and quality of his actions and * * * right from wrong." In his testimony in this post conviction hearing, Dr.

Woytassek stated that he did not examine the defendant in 1967 to determine whether he had capacity to stand trial but instead he determined his mental capacity and his capacity to undergo sentence. He testified at the current hearing that he had serious doubts as to the defendant's capacity to relate to his attorney in any meaningful way so he would have been able to stand trial.

No expert witness who ever examined the defendant before or after trial felt that he was malingering and no expert who examined him before or after trial testified that he was competent to make a rational defense or to assist his counsel in his defense. It might be said the evidence is almost uncontradicted that the defendant not only was unable to assist in his own defense but actively disrupted and impeded any rational defense.

It is interesting to note that Dr. Modlin, a psychiatrist who testified at the post conviction hearing in this case testified as to the factors he would use in determining the issue of mental competency to stand trial. Most of the nine specific items he described have to do with the defendant's ability to assist in his defense. Dr. Modlin was never permitted to give his opinion as to whether, on the basis of hypothetical established facts, the defendant here was, in fact, competent to stand trial at the time of the original trial in 1967.

The evidence as it now appears is overwhelmingly persuasive that the defendant was not mentally competent to make a rational defense nor competent to assist his counsel in that defense and was therefore not mentally competent to stand trial in November 1967. "The tests of responsibility—capacity to know right from wrong, are not the tests which are applied in determining competency to plead or stand trial. The test of mental competency to plead or stand trial is whether the defendant has capacity to understand the

nature and object of the proceedings against him; to comprehend his own condition in reference to such proceedings *and to make a rational defense.*" (Emphasis ours.) State v. Klatt, 187 Neb. 274, 188 N. W. 2d 821.

The evidence is clear that the defendant is now mentally competent to stand trial but was not mentally competent to stand trial in 1967. The original judgment and sentence should be set aside and he should have the fair and impartial trial mandated by the Constitution.

CLINTON, J., concurring.

I concur in the result in this case on the basis of the rule that matters decided on the original appeal will not again be considered in a post conviction proceeding. State v. Weiland, 188 Neb. 626, 198 N. W. 2d 327.

The opinion in State v. Blackwell, 184 Neb. 121, at 124, 125, 165 N. W. 2d 730, shows that competency of the defendant to stand trial was considered and determined at that time.