THOMAS LEONARD RAITHEL *v.* STATE OF
MARYLAND

[No. 117, September Term, 1976.]

*Decided May 5, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Victoria A. Salner, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This is yet another case in which the central issue is whether the accused was properly found competent to stand trial. After the Circuit Court for Prince George's County determined that appellant was competent to stand trial, a jury found him guilty of first degree murder, assault with

intent to rape, and carrying a dangerous weapon openly. On appeal to the Court of Special Appeals, his conviction was affirmed in an unreported opinion, *Thomas Leonard Raithel v. State of Maryland,* [No. 1007, September Term 1975, decided September 23, 1976]. We reverse.

On July 5, 1974, appellant, then 17 years of age, was employed as a busboy by a College Park restaurant at which a young female customer received a fatal stab wound in the chest as she was on her way to the ladies' room. The police investigation immediately focused on appellant. In the course of that investigation, he made several confessions of guilt which were introduced in evidence at trial. His defense consisted mainly of insanity at the time the offense was committed. Additionally, he alleged that he was not competent to stand trial. In accordance with Maryland Code (1957, 1972 Repl. Vol.) Art. 59, § 23, the trial judge held a hearing out of the presence of the jury to determine the competency issue. *See Jones v. State of Maryland,* 280 Md. 282, 372 A. 2d 1064 (1977).

At the hearing, appellant produced a practicing psychiatrist licensed in the State of Maryland, Doctor Richard H. Kastner, who, following voir dire examination, was accepted by the court as an expert witness in both psychiatry and psychology. The witness testified that he had formed an opinion regarding appellant's competency to stand trial on the strength of four examinations, each lasting from one to two hours, made prior to the trial date. He stated:

> "It is my opinion this man is suffering from a mental disorder and that this mental disorder precludes him from thinking in a rational way and understanding the nature and quality of the charges and therefore *cannot effectively, intellectually and emotionally partake in his own defense.*" (Emphasis added).

After recounting in detail appellant's extensive history of emotional illness, the witness expressed the opinion that appellant was suffering from schizophrenia, and was

incompetent to stand trial. His conclusion had been arrived at in this manner:

> "The finding is based upon a team response, a very careful examination with a final report that was submitted, indicating the historical. background of the person, the emotional makeup, the problems that he has had, the manner in which he has handled them, the careful analysis of the crime itself, the motivation that was involved, and the psychological disorder which was present at the time of the commission of the act and *is still present*, which precludes him from thinking *rationally*." (Emphasis added).

On learning that the witness had last examined appellant some five months prior to trial, the court recessed the hearing to permit an additional examination. Subsequently, the witness, after analyzing at length for the court the discussion in which he had just engaged with appellant, again rendered the opinion that "this man is not competent at the present time to understand the full nature and the full quality of the charges brought against him." During cross-examination by the prosecuting attorney, this colloquy occurred:

> "Q. What is the Maryland test under the Maryland law for competency to stand trial?
>
> "A. That he knows the nature and quality of the act that he performed and whether he knows the consequences of those acts basically.
>
> "[Prosecuting Attorney]: Your Honor, I would move to disqualify the doctor's testimony because he does not even know the test.

> \* \* \*

> "[Defense Counsel]: Well, I would say, if I may, I would inquire of the doctor again if the standard by which the State of Maryland in Article 59 as to the

test to determine the mental capacity of the defendant—

"[Prosecuting Attorney]: Objection.

"The Court: Sustained. We are not going to educate the doctor . . . .

"Very well, *grant the motion.* The doctor is disqualified. He has in response to the last question asked on cross-examination, indicated to the Court that he does not know the standard by which this Court is to judge this matter, and accordingly Doctor, thank you. Your testimony is *no longer needed.*" (Emphasis added).

Defense counsel then proffered again to show that the witness knew the test for competency, but had misunderstood the question. The court stood on its prior ruling, denied a defense request for a continuance to have appellant examined by another psychiatrist, and then heard from a psychiatrist produced by the State.

The State's witness, Doctor Wilfried R. Freinek, was employed by the Department of Mental Hygiene as Director of Forensic Psychiatry, and had participated in a staff conference at Clifton T. Perkins Hospital at which appellant had been found competent to stand trial. Over objection, the witness, apparently while reading from Article 59, § 23, was allowed to render the opinion "that the patient is able to understand the nature of the object of the proceedings against him and is able to assist in his defense." The witness reached this conclusion as a result of an examination on the morning of trial lasting some 15 or 20 minutes, "[m]aybe five minutes." [1] In the course of relating appellant's responses to the several questions which he had been asked, the witness testified that "[appellant] was nervous when we discussed the case and he is worried about the outcome of the proceedings."

---

[1] As we read his testimony, a serious question arises as to whether the State's witness personally had ever examined appellant prior to the day of trial.

At the conclusion of the testimony, the trial court announced its ruling:

> "The Court is satisfied beyond a reasonable doubt that indeed this defendant is aware of the nature of these proceedings. This only then leaves the matter of whether or not the defendant is capable of assisting in his own defense. The Court observes that the defense in this case is insanity in the main. I don't think that there is anybody that proffers that this defendant could offer any other assistance because of the nature of the offense and subsequent events.... [W]hat assistance can he offer in the defense of his defense of insanity? He is not a doctor and cannot testify in that area so that that is not a critical, fatal factor in my determination."

In arriving at its determination, the court attached particular significance to Doctor Freinek's testimony "that the defendant was nervous and that he was worried about the outcome of this case indicating to the Court an awareness of these proceedings and the consequences." In respect to appellant's witness, the court said:

> " ... Dr. Kastner's testimony ultimately *has to be eliminated* from the Court's decision *by it granting the State's Motion to Strike it* on the grounds of Dr. Kastner's predicate for his opinion fell. Let me *comment* even beyond that. In looking at Dr. Kastner's testimony I am not satisfied that *even if* I am allowed to consider it that indeed it warrants the Court concluding that Dr. Kastner's opinion of incompetency is *valid.*" (Emphasis added).

In respect to the ruling which excluded Doctor Kastner's testimony, the Court of Special Appeals, though describing it as having been "precipitously" made, treated this contention as merely raising a question of the witness's qualifications. As such, said the court, the issue was addressed to the discretion of the trial judge, and therefore required a showing of abuse to compel reversal. The Court of

Special Appeals was equally unimpressed with the contention that the trial court had misapplied the statutory test for determining competency of the accused by failing to find that appellant was capable of "assist[ing] in his defense." The Court of Special Appeals read the trial judge's ruling to mean merely that where insanity is the primary defense, the defendant's understanding of the nature and object of the proceedings is more "crucial" than is his ability to "assist in his defense." In any event, concluded the court, there was no error since Doctor Freinek's testimony amply supported the determination of competency. We granted certiorari to consider both questions raised by appellant, and turn first to the contention that the trial court erred in not deciding whether appellant was capable of assisting in his own defense.

### (1)

As we have indicated, the test for determining whether the accused in this state is competent to stand trial is set forth in Art. 59, § 23, which, in relevant part, states that the determination is governed by "whether such person is unable to understand the nature of the object of the proceeding against him *or* to assist in his defense." (Emphasis added). Further, the issue of competency is to be determined by the court, which must find beyond a reasonable doubt that the accused is competent to stand trial. *Colbert v. State,* 18 Md. App. 632, 641, 308 A. 2d 726, *cert. denied,* 269 Md. 756 (1973); *Rozzell v. State,* 5 Md. App. 167, 175, 245 A. 2d 917 (1968), *cert. denied,* 252 Md. 732 (1969); *Strawderman v. State,* 4 Md. App. 689, 697, 244 A. 2d 888 (1968), *cert. denied,* 252 Md. 733 (1969).

Prior to the enactment of chapter·709, Laws of Maryland, 1967, now codified with minor amendments as Art. 59, § 23, the applicable statute, Code (1957, 1964 Repl. Vol.) Art. 59, § 7, had provided that the jury was charged not only with the responsibility of determining sanity at the time of commission of the offense, but also with the duty of determining whether the defendant was "sane at the time of trial." Moreover, since the statute had prescribed no test for

determining competency of the accused to stand trial, the Maryland courts had applied the same standard for both insanity at the time of commission of the crime and "insanity" at the time of trial — the *M'Naghten* test adopted in *Spencer v. State*, 69 Md. 28, 13 A. 809 (1888). *See Rowe v. State*, 234 Md. 295, 304-306, 199 A. 2d 785, *cert. denied*, 379 U. S. 924 (1964).

Thus, prior to the enactment of chapter 709, Maryland, unlike a number of states, had not by statute or judicial decision adopted the common law test for competency to stand trial — whether the defendant lacked the "capacity to understand the nature and object of the proceedings against him and to make a rational defense." Note, *Incompetency to Stand Trial*, 81 Harv. L. Rev. 454, 457 (1967). *See Drope v. Missouri*, 420 U. S. 162, 171-72, 95 S. Ct. 896, 43 L.Ed.2d 103, (1975).

The Maryland test for competency adopted in 1967, now contained in Art. 59, § 23, tracks in virtually identical language the federal standard — whether the accused is "so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense." 18 U.S.C. § 4244 (1970). In *Dusky v. United States*, 362 U. S. 402, 80 S. Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam), the Supreme Court, in explicating the federal test, enunciated what has since been widely quoted as the *Dusky* rule:

> " ' . . . whether [the accused] has sufficient present ability to *consult* with his lawyer with a *reasonable degree of rational understanding* — and whether he has a rational as well as factual understanding of the proceedings against him.' " *Id.* (emphasis added).

Although *Dusky* represents the federal test, we remain mindful that the common law prohibition against trying an incompetent defendant, now embodied in both the federal and Maryland statutes, "is fundamental to an adversary system of justice." *Drope v. Missouri*, 420 U. S. at 172.

We agree with the contention that the trial court

misapplied the competency test in this case. The court ruled, in effect, that since appellant's primary defense was insanity at the time of the commission of the crimes, appellant, not being qualified to testify on such technical matters as psychiatry, could not have assisted in his own defense even if otherwise found to be competent at the trial. We do not concur in the view, implicit in the trial judge's ruling, that a defendant whose main defense is insanity at the time of the commission of the crime need be versed in psychiatry to be capable of assisting in his defense. We observe that it is an understandably common practice for one who relies on an insanity defense to assert also his incompetency to stand trial. The practical consequence of the ruling by the trial court was virtually to eliminate in cases in which there is a plea of insanity the requirement that appellant be able "to assist in his defense." In such cases, we think, a " 'present ability to consult with [one's] lawyer with a reasonable degree of rational understanding' " *Dusky v. United States*, 362 U. S. 402, is no less vital than it would be in the case in which the defendant relies primarily on a plea of not guilty, but alleges his incompetency to stand trial.

There is more involved, then, in the ability to assist in one's defense of insanity than a knowledge of the technical aspects of psychiatry or mental disease. "[C]ompetency requires, at a minimum, that the defendant be sufficiently coherent to provide his counsel with information necessary or relevant to constructing a defense." Note, *supra*, 81 Harv. L. Rev. at 457. We are not prepared to dismiss as "[un]necessary or [ir]relevant" the information that a defendant whose primary defense is insanity at the time of the crime might furnish his attorney.

Although we fully recognize, as suggested by the Court of Special Appeals, that the evidence presented to meet both parts of the competency test prescribed by the statute may overlap to some extent, we also take the view that both must be established before the accused alleging incompetency can be brought to trial. In light of the close parallel between the statutory test in Art. 59, § 23 and that applied in the federal

courts, both of which find their origin in the same common law standard, we too agree that not only must the accused have " 'a rational as well as factual understanding of the proceedings against him,' " but also he must at the trial have " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.' " *Dusky v. United States*, 362 U. S. 402. In short, a clearcut distinction do ᵕ exist between the two parts of the statutory test.

Without expressing any view on whether the determination by the trial court that appellant was "aware of the nature of these proceedings" was clearly erroneous or not, we hold that, in any event, it was error to find appellant competent to stand trial absent a determination that he could assist in his defense. Accordingly, a new trial is required, prior to which, if a sufficient allegation of incompetency is made, the trial court shall first determine whether appellant is able to understand the nature of the object of the proceeding against him *and* to assist in his defense. Art. 59, § 23. Since a new trial is therefore necessary, *see Jones v. State*, 280 Md. at 290, we shall also consider here the contention that the trial court erred in striking the testimony presented by appellant's expert witness.

(2)

In regard to the testimony of appellant's expert witness, a preliminary observation is in order. After striking the testimony presented by appellant's psychiatrist, the trial court, in rendering its determination of competency, suggested that "even if ... allowed to consider [the witness's] testimony," the court was "not satisfied" that the testimony warranted the conclusion that the "opinion of incompetency [was] valid." The State suggests that the effect of this comment was to demonstrate that in the final analysis the court actually did weigh the witness's testimony, but nevertheless found appellant competent to stand trial. With this, we cannot agree.

We are frank to say that to us the meaning of the trial court's comment is somewhat less than clear. First, there is

no confusion over its earlier ruling; in unmistakable terms, the court had struck the witness's testimony and had, in effect, dismissed him as a witness. Secondly, the court acknowledged in its concluding statement that it had granted the "State's Motion to Strike," saying also that the "testimony *ultimately* has to be eliminated from the Court's decision." (Emphasis added). Thirdly, the reference to consideration of the excluded testimony was couched in hypothetical terms: "if I am allowed to consider it." Finally, we do not understand what the court intended by using the word "valid" — whether it meant that the expert's opinion of incompetency was invalid because he had been unable to quote the language of the statute, or whether it was merely an expression reflecting the court's rejection of the opinion. We are, in any event, unwilling to speculate. We treat the court's determination of competency as having been made on the premise that only the testimony of the State's expert witness was properly before it.

Alternatively, the State argues, by way of urging approval of the ruling by the trial court, that it was one made in the exercise of its discretion, and that appellant has failed to meet the heavy burden of showing an abuse of that discretion. As appellant himself recognizes, the admissibility of expert testimony is a matter largely within the discretion of the trial court, and its action in admitting or excluding such testimony will seldom constitute a ground for reversal. *Radman v. Harold,* 279 Md. 167, 173, 367 A. 2d 472 (1977); *see I. W. Berman Prop. v. Porter Bros.,* 276 Md. 1, 12-13, 344 A. 2d 65 (1975); *Franceschina v. Hope,* 267 Md. 632, 636, 298 A. 2d 400 (1973). It is well settled, however, that the trial court's determination is reviewable on appeal, *Radman v. Harold,* 279 Md. at 173; *Refrigerating Co. v. Kreiner,* 109 Md. 361, 370, 71 A. 1066 (1909), and may be reversed if founded on an error of law or some serious mistake, or if the trial court has clearly abused its discretion. *Radman v. Harold,* 279 Md. at 173; *see Telak v. Maszczenski,* 248 Md. 476, 496-97, 237 A. 2d 434 (1968).

We are not concerned here, however, with a possible abuse of discretion and the onerous burden which would confront

appellant in that context. At the very inception of the witness's testimony, the court found him qualified to testify as an expert witness on the subjects of psychiatry and psychology; nor did the State challenge his qualifications on that score. The witness was then allowed to proceed with his detailed findings and professional opinions. It was only when the witness was unable to quote verbatim the statutory test for determining competency that the court granted the motion to strike his testimony, and declared him "disqualified" because he did "not know the standard by which [the] Court [was] to judge this matter." Superficially, it might appear that the court was merely rejecting the witness's testimony in the exercise of its discretion. As we perceive the court's ruling, however, despite the use of the word "disqualified," it went further and rested its ruling on the mistaken assumption that to render an opinion of incompetency, the witness was required to do so in the precise words of the statute. As the trial court said:

> " . . . But the law, which is what he was asked about, calls upon me to make that determination providing certain elements are present. He did not know what all of those elements were. Accordingly his predicate for his opinion was faulty and accordingly the opinion obviously is only so good as his predicate is sound and it was unsound and therefore *I have to strike* his testimony." (Emphasis added).

In sum, the decision of the court resulted not from the exercise of discretion, but rather from a ruling of law: that the opinion could only be expressed in the precise words of the statute. *Cf. Radman v. Harold,* 279 Md. at 176 (ruling based not on exercise of discretion but on premise that medical witness was disqualified from expressing expert opinion solely because he was not of same specialty as defendant).

Turning, then, to the critical question raised by the trial court's ruling, we do not agree that the opinion regarding appellant's incompetency was rendered inadmissible by the

inability of the witness to express himself in the exact words of the statute, nor do we believe it proper for his testimony to have been stricken on that ground. The controversy arose when the witness was being cross-examined concerning the second part of the statutory test: whether appellant was able "to assist in his defense." Previously, however, he had testified that appellant "cannot effectively, intellectually and emotionally partake in his own defense." The witness then proceeded to substantiate this opinion by relating in detailed fashion not only what he meant by that statement, but also a description of his examinations and findings regarding appellant.[2] The opinion that appellant could not "effectively, intellectually and emotionally partake in his own defense" strikes us as being, at the very least, a wholly acceptable paraphrase of the statutory requirement that the accused be able "to assist in his defense," particularly when viewed in the entire context of the witness's testimony.

We do not agree, then, that the inability of the witness to include the words of the statute in his opinion warranted the action taken by the trial court. A ruling founded upon that reason places a premium on a conclusory opinion, which contributes little to the resolution of the difficult task confronting the trial judge. "To the extent that psychiatric testimony is utilized, . . . it should be descriptive of the defendant's condition rather than conclusory." Note, *supra*, 81 Harv. L. Rev. at 470 (footnote omitted). The reason for this, put in oversimplified terms perhaps, is that statutes such as § 23 reflect legal standards rather than medical principles. The deficiency inherent in conclusory psychiatric testimony is apparent:

" ' . . . A medical determination on competency is not necessarily the same as a legal determination. A doctor can speak as an expert only in terms compatible with his medical training and experience, and psychiatric terminology and legal

2. Ironically, the opinion of the State's expert witness was accepted even though it was expressed only in the conclusory language of the statute and with little more to support it.

standards often reflect different concepts to the use of the same words.' " *Holloway v. United States,* 343 F. 2d 265, 267 n. 4 (D.C. Cir. 1964).

By allowing psychiatric testimony to be expressed in the same conclusive terms as the ultimate incompetency question, "courts shift responsibility for the determination [of competency] to psychiatrists who have no special ability to decide the legal issue." Note, *supra,* 81 Harv. L. Rev. at 470. Rather than be required, then, to express his opinion on the competency issue in the conclusory language of the statute, as was the case here, the psychiatrist should be permitted to do so in descriptive terms compatible with his medical training and experience.

We think the trial court erred in striking the testimony of appellant's witness and in not considering his opinion on the issue of competency to stand trial.

> *Judgment of the Court of Special Appeals reversed; remanded to that court with instructions to reverse the judgment of the Circuit Court for Prince George's County, and to remand for a new trial; costs to be paid by Prince George's County, Maryland.*