STATE OF NEBRASKA, APPELLEE, V.
WILLIAM J. GUATNEY, APPELLANT.

299 N.W.2d 538

Filed December 12, 1980.   No. 43609.

Dennis R. Keffe, Lancaster County Public Defender, and Rodney J. Rehm for appellant.

Ron Lahners, Lancaster County Attorney, and Robert R. Gibson for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and BURKHARD, District Judge.

PER CURIAM.

The appellant, William J. Guatney, appeals from an order of the District Court for Lancaster County, Nebraska, finding him incompetent to stand trial and committing him to the Lincoln Regional Center until such time as he is found to be competent. We have now concluded, based upon our reading of the record and the applicable law, that appellant is competent to stand trial and, therefore, we reverse and remand the order of the District Court.

There are a number of errors assigned by appellant. We believe, however, that only two issues need be considered in order for us to properly dispose of this matter. The first concerns the question of whether the court's finding that the appellant was incompetent to stand trial and its order committing him to the Lincoln Regional Center until he is competent to stand trial was a final order from which appellant could appeal to this court. The second is whether the evidence adduced at the competence hearing was sufficient to establish the fact that the appellant is incompetent to stand trial.

The facts relevant to the disposition of this matter disclose that on August 18, 1979, appellant was charged by a complaint and information in the Lancaster County court with two counts of first degree murder. He waived his right to a preliminary hearing and was arraigned in the District Court on the same charges on October 18, 1979, at which time he entered a plea

of not guilty to each count of the information.

On November 27, 1979, appellant's attorney filed a motion pursuant to Neb. Rev. Stat. § 29-1823 (Reissue 1979) to determine whether appellant was competent to stand trial. Hearing was held on November 30, 1979, as a result of which the trial court entered an order finding that a further examination should be performed upon appellant to determine whether appellant was competent to stand trial. The court, therefore, committed appellant to the Lincoln Regional Center for additional examination and ordered that a report be sent to the court by the authorities at the regional center. Following the further evaluation, a hearing was held on February 14, 1980. Based upon testimony given by Dr. Leonard E. Woytassek, chief of the security service at the Lincoln Regional Center, the court found that appellant was mentally incompetent to stand trial and committed him to the Lincoln Regional Center "until such time as the defendant's disability may be removed."

On June 10, 1980, appellant's attorneys filed a motion for review of the court's order finding the defendant incompetent to stand trial. The review was requested for "the reason that the defendant now appears competent to stand trial." A hearing on the motion was held on June 18 and 20, 1980.

Four mental health professionals who had examined appellant for competency to stand trial testified at the hearing. Mr. Guatney was diagnosed by Dr. Emmett Kenney as having mild organic brain syndrome with "a tendency to disorganize under serious stress." Dr. Kenney did, however, testify that, in his opinion, appellant now met all the necessary requirements to establish his competency to stand trial.

Dr. James K. Cole, a psychologist who had previously examined appellant, likewise testified that, in his opinion, appellant met all the necessary requirements to establish his competency to stand trial.

Dr. William C. Bruns, a psychiatrist, examined the

appellant on two occasions. While Dr. Bruns also believed that appellant had organic brain syndrome, he nevertheless testified that, in his opinion, appellant met the competency standards and said he felt that appellant could maintain his level of competency through trial.

Finally, Dr. Woytassek testified. Dr. Woytassek stated that he believed that appellant would understand the nature of the proceedings against him but he cautioned that, because of paranoid ideation, appellant has the general feeling that people involved in the proceedings are against him. Dr. Woytassek further felt that appellant was rather unstable and, therefore, sometimes he would be able to consult with his attorneys and sometimes he would not.

During the testimony of several witnesses, appellant interrupted the court proceedings, shouting and making verbal comments. While the evidence would indicate that the outbursts by appellant were disruptive, the evidence likewise indicates that the outbursts were directly related to the very testimony then being given by the witnesses. The trial court did not admonish appellant about his behavior or attempt any other means to restrain appellant from continuing his disruptive behavior, although appellant's counsel attempted to quiet him.

On June 24, 1980, the court issued a memorandum order finding appellant not competent to stand trial. The order specifically addressed the question of appellant's memory and found that, while appellant's memory was poor and might, therefore, have a limited effect on his ability to present his defense, it was not so poor as to prevent appellant from aiding in his own defense.

Of greater concern to the court was the appellant's mental and emotional instability. The court felt that appellant was unfamiliar with courtroom procedure, as evidenced by his outbursts in court, and that he further displayed an inability to cooperate with his

defense counsel, holding a desire for undeserved punishment rather than justice. The trial court, therefore, believed that the stress of a multiweek trial would result in appellant making profane responses to witnesses, counsel, the court, or even the jury, which would result in a mistrial and an ultimate finding that the appellant was incompetent to stand trial. Likewise, the trial court was concerned that appellant could not meaningfully waive any of his constitutional rights and would deteriorate during the course of the trial. Appellant was, therefore, committed to the Lincoln Regional Center until he was no longer incompetent. It is from that order that he now appeals.

We need first, then, to turn to the issue of whether an order finding appellant not competent to stand trial and directing him to be confined in the Lincoln Regional Center until he is competent to stand trial is a final order within the meaning of the applicable Nebraska statutes so as to entitle appellant to appeal from that order to this court.

Neb. Rev. Stat. § 25-1911 (Reissue 1979) provides that: "A judgment rendered or final order made by the district court may be reversed, vacated or modified by the Supreme Court for errors appearing on the record." A final order is defined by Neb. Rev. Stat. § 25-1902 (Reissue 1979) as: "An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment . . . ."

No Nebraska cases are cited to us, nor are we able to find any in which this specific issue has been decided. Other jurisdictions have split on the issue of whether an order finding one incompetent to stand trial and committing one to an institution is an appealable order. See Annot., 16 A.L.R.3d 714 (1967). We believe, however, a review of what is involved when one accused of a crime is declared incompetent to

stand trial and ordered confined until the defect is cured, in light of § 25-1902, compels us to join with those jurisdictions which have determined that an order finding an accused incompetent to stand trial and directing his confinement until he becomes competent is a final order in a special proceeding from which an appeal may be taken to this court.

We reach our conclusion concerning the right of appeal because we believe that a hearing pursuant to § 29-1823 to determine the competency of an accused to stand trial is a special proceeding within the meaning of § 25-1902.

We have previously said in the case of *Sullivan v. Storz*, 156 Neb. 177, 180, 55 N.W.2d 499, 502 (1952): "A special proceeding may be said to include every special statutory remedy which is not in itself an action. . . . 'Where the law confers a right, and authorizes a special application to a court to enforce it, the proceeding is special, within the ordinary meaning of the term "special proceeding."' [Citation omitted.]"

A reading of § 29-1823 clearly establishes that it is a "statutory remedy which is not itself an action." That it is a statutory remedy is self-evident. Likewise, it is not itself an action. Before one may be examined pursuant to § 29-1823, one must be charged with a crime and awaiting trial. One cannot be subjected to the provisions of § 29-1823 standing alone. There is no other conclusion which can be reached except to find that proceedings commenced pursuant to § 29-1823 are special proceedings as referred to in Neb. Rev. Stat. § 25-1902 (Reissue 1979). See, *People v. Fields*, 62 Cal. 2d 538, 399 P.2d 369, 42 Cal. Rptr. 833 (1965); *Turpin v. Coates*, 12 Neb. 321, 11 N.W. 300 (1882); *Western Smelting & Refining Co. v. First Nat. Bank*, 150 Neb. 477, 35 N.W.2d 116 (1948).

Further, in *Sullivan*, after establishing that the action was a special proceeding, we held that there was a right of appeal, saying at 181, 55 N.W.2d at 502: "We think it clear that the order here involved is

one made in a special proceeding. That it affects a substantial right of the plaintiff is also clear. The right to a trial without unreasonable and unnecessary delay is as old as Magna Charta. Our Constitution, Article I, section 13, provides: 'All courts shall be open, and every person, for any injury done him in his lands, goods, person or reputation, shall have a remedy by due course of law, and justice administered without denial or delay.' This provision is self executing and controlling, paramount and mandatory upon all courts of this state."

In *State v. Shaw*, 202 Neb. 766, 770, 277 N.W.2d 106, 110 (1979), we expressed our concern about denying a defendant a right of appeal saying: "It is therefore clear that by delaying the imposition of a sentence indefinitely, a defendant is denied the right of appeal from the original charge. Such denial offends basic notions of due process and equal protection of the law and cannot be permitted." See, likewise, *Jackson v. Indiana*, 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972).

If a defendant were found suffering from a mental illness and ordered confined to the Lincoln Regional Center by a mental health board, he would be entitled to appeal that order to this court. Neb. Rev. Stat. § 83-1043 (Reissue 1976). If an individual had been unlawfully committed to the Lincoln Regional Center and had filed a writ of habeas corpus seeking his release, which writ was denied, he would be entitled to appeal that order to this court. *In re Application of Tail, Tail v. Olson*, 144 Neb. 820, 14 N.W.2d 840 (1944). We, therefore, find little reason or sense in suggesting that one may be deprived of his liberty under a court order finding him incompetent and denying him a speedy trial and have no recourse from that order. In the instant case, the court has done more than declare that the accused need not answer the charges against him. The court, by virtue of its order, has denied the appellant a right to a speedy

trial which he seeks and has likewise denied the appellant his liberty for an undetermined time. It is difficult, if not impossible, to see how that order, therefore, does not affect a substantial right or is not an order from which the appellant should be entitled to appeal pursuant to the provisions of § 25-1911. See, also, *Jackson v. Indiana, supra.*

The State argues that the appellant is not without recourse in that he may file an application for writ of habeas corpus or may depend upon the State to file an action for civil commitment. While all of that may be true, it does not answer the question, "Has an order been entered affecting a substantial right of the appellant in a special proceeding?" If, indeed, it has, then the fact that there may be other alternatives available should not preclude the appellant from seeking review of that order in this court by appeal. Had the trial court found the appellant competent and ordered him to trial, an entirely different situation would exist. Upon the conclusion of the case on its merits, should the accused be found guilty, he would have a means of bringing the issue of his competency to this court for review. Here, however, because the court order finds the accused incompetent to stand trial, he has no other effective means to test the trial court's order denying to him a right of trial unless he may, at this point in time, appeal to this court. We now hold that a proceeding to determine the competency of an accused to stand trial is a special proceeding within the meaning of § 25-1902 and that an order finding the appellant incompetent to stand trial and ordering him confined until such time as he is competent is a final order from which an appeal may be taken under § 25-1911. See, also, *State v. Loomis,* 195 Neb. 552, 239 N.W.2d 266 (1976).

Having thus determined that this court may appropriately review the order of the trial court, we now turn to the question of whether the appellant is, in fact, competent to stand trial.

The question of whether the appellant is now competent to stand trial is separate and distinct from the question of whether the appellant may be responsible for the commission of the crime. The test to determine whether an accused is competent to stand trial is not the same test applied to determine whether the accused may be not guilty by reason of insanity. The test of mental competency to stand trial is whether the defendant now has the capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, and to make a rational defense. See, *State v. Crenshaw*, 189 Neb. 780, 205 N.W.2d 517 (1973); *Dusky v. United States*, 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960); *State v. Klatt*, 187 Neb. 274, 188 N.W.2d 821 (1971).

Competency is, to some extent, a relative matter arrived at by taking into account the average level of ability of criminal defendants. We cannot, however, exclude from trial all persons who lack the intelligence or legal sophistication to participate actively in their own defense. That is not the standard by which we measure competency. Should we do so, we would preclude the trial of a number of people who are, indeed, competent to stand trial as understood in the law. The accused need not understand every legal nuance in order to be competent. He need only meet the standards as established by us in *Crenshaw* and *Klatt* and set out above.

Applying those standards for determining competency as recited herein and referred to in part by us in both *State v. Klatt* and *State v. Crenshaw*, we are required to find that the appellant is competent to stand trial. The record reveals that all four expert witnesses who testified at the June 1980 hearing were of the opinion that the appellant could appreciate the proceedings in court; understand the nature of the roles that the judge, the prosecutor, and the defense attorney would play; and cooperate with his attorneys to provide

for a defense. None of the four suggested or testified that, in their medical opinion, the appellant was unable to meet those tests. Some of the witnesses were concerned that there was a possibility that appellant, under stress, might become incompetent. That is not the test of competency to stand trial. One might, under the stress of a trial, suffer a heart attack. The possibilities that the stress of trial may alter the appellant's present condition does not preclude him from his right to a speedy trial if, at this time, the evidence indicates that he is competent.

The record in this case indicates that appellant has most, if not all, of the requisite qualities necessary to establish competency. As a matter of fact, one of the most telling parts of the evidence was the fact that the appellant's outbursts in court, while disruptive of the court proceedings, were directly related to the testimony then being given. It was clear from a reading of the record that appellant knew exactly what was being said and chose to react to the testimony. While his reaction may not have been in as appropriate a fashion as one would hope in order to maintain decorum in the courtroom, it was not so bizarre as to indicate that the appellant did not understand the proceedings, or the effect of testimony, or his need to give aid on behalf of his own defense.

Three of the expert witnesses concluded that the appellant was competent to stand trial. And, while the fourth witness stated by way of a conclusion that appellant was not competent to stand trial, the facts reflected in the evidence from his testimony did not support his ultimate conclusion, but rather supported a finding that, under the standards established by the *Crenshaw* and *Klatt* cases, the appellant was indeed competent to stand trial.

The trial court was properly concerned that, if the appellant was ordered to stand trial, he might suffer withdrawal and, secondly, that he might continue to engage in outbursts which would cause a mistrial

based on prejudice. These are two important and significant concerns of which the trial court will have to be mindful during the course of the trial. The trial court will have to continually monitor the trial and the appellant's behavior to determine that the appellant is indeed competent during the course of the trial. Likewise, the trial court will be called upon to exercise the judicial role of attempting to maintain reasonable order within the courtroom so as to avoid prejudice. The need to maintain order in the courtroom, however, is not unique to this case. Courts are often called upon to restrain individuals, including ordering their removal from the courtroom, if they persist in disregarding proper courtroom decorum. See, *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970); *State v. Blackwell*, 184 Neb. 121, 165 N.W.2d 730 (1969).

This was, indeed, an unusual proceeding in that the appellant here was seeking to have himself declared competent to stand trial. Most often, the reverse is true. If, however, one thinks of the evidence presented here as if it had been offered in support of a claim that the appellant should not be required to stand trial because he was not now competent to stand trial, one is led to the conclusion that such a request would be denied. One may not escape answering criminal charges based upon a *possibility* that the stress of trial may change one's present condition. More than a mere possibility must exist. While we appreciate the trial court's concerns about that possibility, we are of the opinion that, absent any testimony in this record that the appellant is now incompetent to stand trial, and, in the presence of the evidence that he is, in fact, competent to stand trial, he must be afforded his right to that speedy trial. We, therefore, reverse the order of the District Court and remand the case with directions to find the appellant competent to stand trial and to proceed accordingly. Should the condition of the appellant change, the trial court will be at liberty

to make appropriate and timely orders. Having so disposed of this appeal, we need not consider the other errors assigned by appellant.

REVERSED AND REMANDED.

KRIVOSHA, C.J., concurring.

I concur completely with the majority opinion herein. I wish, however, to make brief comment with regard to how a trial court may satisfy itself that, indeed, an accused meets the three-fold test for competency.

While the test for determining mental competency to stand trial as established in *State v. Crenshaw*, 189 Neb. 780, 205 N.W.2d 517 (1973), and *State v. Klatt*, 187 Neb. 274, 188 N.W.2d 821 (1971), standing alone, may be difficult to apply, other cases have discussed a number of factors which are of aid to a court in arriving at an appropriate conclusion. The factors which have been considered in determining competency include the following: (1) That the defendant has sufficient mental capacity to appreciate his presence in relation to time, place, and things; (2) That his elementary mental processes are such that he understands that he is in a court of law charged with a criminal offense; (3) That he realizes there is a judge on the bench; (4) That he understands that there is a prosecutor present who will try to convict him of a criminal charge; (5) That he has a lawyer who will undertake to defend him against the charge; (6) That he knows that he will be expected to tell his lawyer all he knows or remembers about the events involved in the alleged crime; (7) That he understands that there will be a jury present to pass upon evidence in determining his guilt or innocence; (8) That he has sufficient memory to relate answers to questions posed to him; (9) That he has established rapport with his lawyer; (10) That he can follow the testimony reasonably well; (11) That he has the ability to meet stresses without his rationality or judgment breaking down; (12) That he has at least minimal contact with reality; (13) That he has the minimum intelligence necessary to grasp the

events taking place; (14) That he can confer coherently with some appreciation of proceedings; (15) That he can both give and receive advice from his attorneys; (16) That he can divulge facts without paranoid distress; (17) That he can decide upon a plea; (18) That he can testify, if necessary; (19) That he can make simple decisions; and (20) That he has a desire for justice rather than undeserved punishment. *Wieter v. Settle*, 193 F. Supp. 318 (W.D. Mo. 1961); *Raithel v. State*, 280 Md. 291, 372 A.2d 1069 (1977); Comment, Incompetency to Stand Trial, 81 Har. L. Rev. 454 (1967).

It should be kept in mind that, in order to establish competency, it is not necessary that an accused meet all of the above factors but only that, considering the various factors as a whole, one is compelled to conclude that the accused has the capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, and to make a rational defense. By using some or all of the enumerated factors, a trial court should be aided in arriving at an appropriate conclusion.