# SUPERIOR COURT
## of the
# STATE OF DELAWARE

Jeffrey J Clark
Resident Judge

Kent County Courthouse
38 The Green
Dover, DE 19901
Telephone: (302)-735-2111

Erika Flaschner
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 7ᵗʰ Floor
Wilmington, DE 19801

Andre Beauregard, Esquire
Brown, Shiels & Beauregard, LLC.
148 South Bradford Street
Dover, DE 19904

**RE:** ***State v. Timothy Silvils***
***Id. No. 1907008254***

Submitted: February 4, 2022
Decided: March 11, 2022

Counsel:

This letter provides the Court's decision and reasoning after Defendant Timothy Silvils' competency hearing that spanned January 12, 2022, and January 20, 2022. At the hearing, two expert witnesses offered contrary opinions regarding Mr. Silvils' competency. After considering their testimony, the evidence of record, and the parties' post-hearing submissions, the Court finds that Mr. Silvils is not competent to stand trial for the reasons discussed below.

## Background

Mr. Silvils is sixty-one years old and has suffered from schizophrenia since at least 1981. He also suffers from an anti-personality disorder and drug dependency.

On July 22, 2019, he allegedly attacked and stabbed his former attorney on a Wilmington street. As a result, the State charged him with Assault Second Degree, and Possession of a Deadly Weapon During the Commission of a Felony. The alleged victim had represented Mr. Silvils several years before the incident, and after that representation, Mr. Silvils fixated upon the alleged victim and some of the other participants in that case.

Over the course of Mr. Silvils' life, he has been hospitalized repeatedly for mental illness. To date, he has had over thirty-four admissions to the Delaware Psychiatric Center ("DPC"). He has also been frequently admitted to Meadow Wood, the Rockford Center, and Dover Behavioral Health.

## Standard

In a competency hearing, the State carries the burden of proof.[1] It must demonstrate that a defendant is competent to stand trial by a preponderance of the evidence.[2] The General Assembly has codified the applicable standard for competency, which tracks United States Supreme Court precedent. Namely, subsection 404(a) of Title 11, Delaware Code provides:

> [w]henever the court is satisfied, after hearing, that an accused person, because of mental illness or serious mental disorder, is [(1)] unable to understand the nature of the proceedings against the accused, or [(2)] to give evidence in the accused's own defense or [(3)] to instruct counsel on the accused's own behalf, the court may order the accused person to be confined and treated in the Delaware Psychiatric Center until the accused person is capable of standing trial.[3]

---

[1] *Diaz v. State*, 508 A.2d 861, 863 (Del. 1986).

[2] *Id.*

[3] 11 *Del. C.* § 404(a) (emphasis added). This statutory standard tracks the standards set forth by the United States Supreme Court in *Dusky v. United States*, 362 U.S. 402 (1960) and *Drope v. Missouri*, 420 U.S. 162 (1974).

When applying this standard, Delaware courts use varying, though similar, criteria. For instance, they have used the McGarry criteria,[4] which are widely known as the "Competency to Stand Trial Instrument,"[5] and separately, the factors identified in the Nebraska Supreme Court's decision in *State v. Guatney*.[6] Those tests, and similar ones, assess a defendant's basic knowledge of the process and his or her ability to participate in his or her defense.

---

[4] *State v. Shields*, 593 A.2d 986, 1000 n.23 (Del. 1990). The McGarry factors are an assessment procedure used by mental health experts as one tool for determining competency to stand trial. The McGarry factors are as follows:

> (1) The defendant's ability to appraise the legal defenses available; (2) the defendant's ability to plan a legal strategy; (3) level of manageable behavior; (4) quality of relating to his or her attorneys; (5) ability to appraise the participants in the courtroom; (6) understanding of court procedures; (7) appreciation of the charges; (8) appreciation of the range and nature of the penalties; (9) ability to appraise the evidence and likely outcome; (10) capacity to disclose to his or her attorneys available pertinent facts surrounding the offense; (11) capacity to challenge prosecution witnesses realistically; (12) capacity to present relevant testimony; and (13) motivation for a positive outcome. *Id.*

[5] *Id.*

[6] 299 N.W.2d 538 (Neb. 1980)). The *Guatney* factors are as follows:

> (1) That the defendant has sufficient mental capacity to appreciate his presence in relation to time, place, and things; (2) that his elementary mental processes are such that he understands that he is in a court of law charged with a criminal offense; (3) that he realizes there is a judge on the bench; (4) that he understands that there is a prosecutor present who will try to convict him of a criminal charge; (5) that he has a lawyer who will undertake to defend him against the charge; (6) that he knows that he will be expected to tell his lawyer all he knows or remembers about the events involved in the alleged crime; (7) that he understands that there will be a jury present to pass upon evidence in determining his guilt or innocence; (8) that he has sufficient memory to relate answers to the questions posed to him; (9) that he has established rapport with his lawyer; (10) that he can follow the testimony reasonably well; (11) that he has the ability to meet stresses without his rationality or judgment breaking down; (12) that he has at least minimal contact with reality; (13) that he has the minimum intelligence necessary to grasp the events taking place; (14) that he can confer coherently with some appreciation of proceedings; (15) that he can both give and receive advice from his attorneys; (16) that he can divulge facts without paranoid distress; (17) that he can decide upon a plea; (18) that he can testify, if necessary; (19) that he can make simple decisions; and (20) that he has a desire for justice rather than undeserved punishment. *Id.* at 545.

## Evidence Presented at the Hearing

The evidence of record demonstrates that Mr. Silvils has suffered from significant mental illness and substance abuse since at least 1981. He is a prior convicted felon and has been previously incarcerated several times. Furthermore, he has pled guilty to prior crimes on at least four separate occasions. Since the day of his arrest in July 2019, he has been confined in either a Department of Correction Level V facility or DPC's Mitchell Building.

Two witnesses testified at the hearing: the State's expert psychologist, Dr. Roberts, and the Defense's expert neuropsychologist, Dr. Bell. In addition to their testimony, the parties submitted eight competency evaluation reports that address his condition from arrest until present.[7] The two testifying doctors authored some of those reports. Other psychiatrists and psychologists authored others.

As an overview, the reports are detailed and address Mr. Silvils' condition from August 2019 through January 2022. They describe various experts' evaluations and provide their opinions regarding Mr. Silvils' condition during three distinct time periods since Mr. Silvils' arrest.

The first group includes two reports that cover the first seven months after his arrest and incarceration. More specifically, the reports include a psychiatric report and a psychological report that document the authors' opinions regarding his competency from shortly after his arrest through February 12, 2020.[8] The most relevant of the two provides an opinion that Mr. Silvils was competent to stand trial up until at least February 12, 2020.[9]

---

[7] State's Exs. 2-5; Def's Exs. 2-5.

[8] State's Ex. 4 (Jessica Bayner, M.D. & Andrew W. Donohue, D.O.); State's Ex. 5 (Charlotte Selig, Psy.D).

[9] *See* State's Ex. 4, at 10 (concluding "to a reasonable degree of medical certainty that the defendant does possess an adequate rational and factual understanding of the proceedings against him . . . . [a]ccordingly, I do believe that he has the capacity to stand trial"); State's Ex. 5, at 8

The second "group" consists of a single report authored by Dr. Bell on February 19, 2021.[10] In that report, Dr. Bell opined that Mr. Silvils had destabilized to the point that he had become incompetent to stand trial.[11] Dr. Bell also recommended that Mr. Silvils be transferred from a Level V facility to DPC for stabilization.[12] The Court considers this single report to be part of a second "group" because, upon Mr. Silvils' transfer to DPC, DPC treatment personnel acknowledged the severity of his psychotic episodes and treated him. The State does not contest that Mr. Silvils lacked competency in and around February 2021 because of his schizophrenia.

The third, and most recent group, consists of reports that provide contrary opinions regarding his competency. First, a DPC evaluator found that Mr. Silvils had regained competency by June 2, 2021.[13] In response, Dr. Bell performed a record review and questioned whether Mr. Silvils' treatment records supported that opinion.[14] The defense then requested a court order to enable Dr. Bell the opportunity to evaluate Mr. Silvils a second time.

It was at this point that DPC evaluators and Dr. Bell performed successive evaluations that were too far apart to permit the Court to schedule a fall 2021 competency hearing. The delays, due in large part to Covid-19 concerns, caused leap-frogging evaluations that, in part, discounted one another because the experts were unable to evaluate Mr. Silvils within a reasonable time of one another. As they performed these successive evaluations, they reached opposite conclusions regarding his competency.

---

(declining to give an opinion as to competency, one way or the other, but noting that Mr. Silvils presented as psychiatrically stable).

[10] Def's. Ex. 2.

[11] *Id.* at 24-25.

[12] *Id.* at 25.

[13] State's Ex. 3 (Yi Wang, M.D.).

[14] Def's Ex. 3, at 1-3.

By the fall of 2021, the Court sought to schedule a competency hearing but recognized that each delay in the opposing evaluations prevented the experts from making an apples to apples comparison regarding his condition. In other words, the delays in the successive evaluations left open the possibility that Mr. Silvils would be competent at the time of one evaluation, but then would decompensate by the time of the next evaluation.

In summary regarding this third group of reports, all doctors agreed that Mr. Silvils destabilized in early 2021 and became incompetent. Thereafter, DPC evaluators opined that he regained competency by June 2021. Dr. Bell's reports, on the other hand, included the opinions that Mr. Silvils never regained competency and that there is no way to restore his competency. In what becomes important to the Court's decision, Dr. Bell bases his opinion, in large part, on his diagnosis that Mr. Silvils suffers from dementia.

Transitioning to the testimony presented at the hearing, Dr. Roberts explained that he evaluated Mr. Silvils and based on that evaluation, he formulated his opinion that Mr. Silvis is competent to stand trial.[15] In addition to relying on his own examinations, Dr. Roberts relied upon prior reports from other evaluators who had also examined Mr. Silvils through the summer of 2021.[16] Those other professionals believed Mr. Silvils to be competent at the time they wrote their reports.[17]

At the hearing, Dr. Bell testified that he agreed, in part, with Dr. Roberts. Namely, he agreed that Mr. Silvils had returned to his schizophrenic baseline by late spring of 2021 after DPC began administering Mr. Silvils long-term injectable anti-psychotic medication.[18] Through a battery of diagnostic tests and personal

---

[15] Tr. Competency Hearing, at 10- 65 (Jan. 13, 2022).
[16] *Id.* at 61:15-23.
[17] State's Exs. 3, 4.
[18] Tr. Competency Hearing, at 105-107:6-12.

observations, Dr. Bell, further opined that Mr. Silvils began suffering from rapidly progressing dementia as soon as September 2021.[19] With that overlapping condition on top of the schizophrenia, Dr. Bell testified that Mr. Silvils is not competent to stand trial.[20] In fact, Dr. Bell opined that because of the rapid and irreversible nature of Mr. Silvils' dementia, he will never regain competency.[21]

## Findings of Fact and Analysis

Both testifying psychologists were highly qualified, credible, and articulate. While they recommended that the Court apply two different benchmarks regarding Mr. Silvils' competency, both doctors' testimonies provided the Court helpful information as to Mr. Silvils' mental illness and the effects of that mental illness. Dr. Bell, however, was the only expert who provided the Court information regarding Mr. Silvils' dementia. Because only Dr. Bell evaluated Mr. Silvils for dementia and because Dr. Roberts offered no opinion regarding that condition, the two experts' opinions are best described as two ships passing in the night.

On one hand, Dr. Bell's evaluations and testimony centered on Mr. Silvils' dementia that began around the fall of 2021. He explained how his dementia, when overlayed upon his schizophrenia, renders him incompetent to stand trial.[22] On the other hand, Dr. Roberts testified that neither he nor anyone at DPC had the expertise to evaluate whether Mr. Silvils suffers from dementia. Nor does DPC have personnel that are qualified to determine what effect it may have on his competency.[23] Furthermore, apart from Dr. Roberts' testimony, the State offered

---

[19] *Id.* at 97-98:14.
[20] *Id.* at 97:19-21.
[21] *Id.* 104:8-9.
[22] *See* Def's Ex. 4, at 24-30.
[23] *See* Tr. Competency Hearing, at 68:12-23 (explaining that DPC does not employ any neuropsychologists, who would be necessary to evaluate dementia-related conditions).

7

no other medical, psychiatric, or psychological evidence to address what became a a central issue. Given the State's failure to rebut Dr. Bell's opinions on this critical issue, the State has not met its burden of proof. As a result, Mr. Silvils **is not competent to stand trial**.

Given this finding, the Court must next apply the second portion of 11 *Del. C.* § 404(a). Namely, when a defendant is found incompetent, "the court may order the accused person to be confined and treated in [DPC] until the accused person is capable of standing trial."[24] Here, Mr. Silvils has not filed a motion to require the State to present a prima facie case against him, as would be permitted by statute.[25] Accordingly, Mr. Silvils shall remain committed absent a further order of the Court.

Given Mr. Silvils' continued placement at DPC, the Court must address an additional issue raised by Dr. Bell's testimony. Namely, Dr. Bell testified that Mr. Silvils' dementia will prevent him from ever regaining competency. He described his condition as irreversible and further opined that it will rapidly progress. Although the State did not offer evidence to rebut that opinion either, the Court declines, at this point, to find that Mr. Silvils can never be restored to competency. It does so for two reasons.

First, in the interest of justice, the Court recognizes the gravity of the allegations in this case, and the potential impact upon community safety if Mr. Silvils were to be released under circumstances where he may not be subject to a civil involuntary commitment or another high level of supervision. Because neither DPC nor the State have considered the possibility that Mr. Silvils' dementia could be a significant contributing factor in assessing Mr. Silvils competency, they must do so to assist the Court.

---

[24] 11 *Del. C.* § 404(a).

[25] *See id.* (permitting a defendant to file a motion requesting the court to conduct a hearing to determine whether the State can make out a prima facie case against the defendant).

8

In this regard, it is the State that has charged Mr. Silvils with crimes. Likewise, it is the State that bears the burden of demonstrating his competency to stand trial. Accordingly, if the State maintains that Mr. Silvils is competent or that he can be restored to competency, it must retain an outside evaluator to perform an appropriate evaluation. More specifically, it must, in conjunction with DPC, or on its own, secure an appropriate competency evaluation by a neuropsychologist or other appropriate expert. To meet this need, DPC also remains free to adopt new protocols or to contract with an outside evaluator who can assess the impact of Mr. Silvils' dementia on his competency.[26]

Second, the passage of another six months may provide better context for the Court, before it issues a final decision. Namely, if Mr. Silvils' dementia progresses as rapidly as Dr. Bell opines, the condition and its effects may become so self-evident within the next six months that the State may reevaluate its position. On the other hand, if Dr. Bell is not correct, and Mr. Silvils' condition does not progress, the converse may become evident. A lack of progression of the disease and additional expert evidence on the issue may help resolve the issue in a second hearing.

As a result, the Court will set a second competency hearing for October 21, 2022. To prevent a repeat of the scheduling difficulties that the Court and the parties faced because of "leap-frogging" expert evaluations, both parties shall evaluate Mr. Silvils on a strict schedule set by the Court. If the State (1) maintains its position that Mr. Silvils is competent, and (2) DPC personnel remain unable to evaluate what effect his alleged dementia has on his competency, then the State, in

---

[26] *See State v. Raison*, 2011 WL 7477205, at *1 (Del. Super. Dec. 30, 2011) (where in the context of a defendant who suffered a debilitating and permanent stroke, the Court placed the parties on notice of the need for an appropriate evaluation of that condition and the consequence of dismissal if not).

consultation with DPC, shall secure an appropriate expert to evaluate his condition pursuant to the scheduling order which follows.

## Conclusion

For the reasons discussed above, the Court orders the following and enters the following amended scheduling order:

1. Mr. Silvils is **not competent** to stand trial;

2. He shall remain at DPC until further order of the Court;

3. The State shall determine, no later **August 31, 2022**, whether it takes the position that Mr. Silvils can be restored to competency. It must be prepared to support that decision, at least in part, with an evaluation or evaluations performed by an expert who has examined Mr. Silvils in August 2022, and who is qualified to assess Mr. Silvils' dementia;[27]

4. On or before **August 31, 2022**, the State (1) shall request a competency hearing in writing and include all evaluations (that have not previously been provided) that support its position that Mr. Silvils is competent or can be restored to competency; or, in the alternative, (2) it shall notify the Court that it is prepared to stipulate that Mr. Silvils' competency cannot be restored;

---

[27] DPC shall facilitate the identification of an evaluator that can assess the nature and effect of Mr. Silvils' dementia. To the extent DPC or the State believe a further Court order is required to implement this requirement, DPC shall notify the Court sufficiently in advance of August 2022 to obtain such an order.

5. If the State seeks a second competency hearing to present additional evidence, then Mr. Silvils' counsel must provide any rebuttal evaluation report to the Court by no later than **October 7, 2022**;[28]

6. In the event a second competency hearing is necessary, the hearing is conditionally scheduled for **9:00AM on Friday, October 21, 2022**, in New Castle County; and,

7. If at some point prior to August 2022, either the State or DPC change their position and agree that that Mr. Silvils has become permanently incompetent, then they shall contact the Court promptly so the Court can hold a status conference.

**IT IS SO ORDERED.**

Very truly yours,

/s/Jeffrey J Clark
Resident Judge

JJC:klc

cc:  NCC Bluebook

---

[28] DPC shall cooperate and facilitate access and scheduling for any reasonably requested defense expert examination between August 31, 2022 and September 23, 2022.

11