# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,       )
      )
      )    ID No.  1907008254
      )
      )
      v.       )
      )
TIMOTHY M. SILVILS,       )
      )
      Defendant.       )
      )
      )

Submitted:  October 21, 2022
Decided:  December 8, 2022

## MEMORANDUM OPINION & ORDER

## Decision After Second Competency Hearing:  Competent to Stand Trial

Erika R. Flaschner, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorney for the State.*

Andre M. Beauregard, Esquire, Brown, Shields & Beauregard, LLC., Dover, Delaware, *Attorney for Defendant.*

**Clark, R.J.**

The Court held a competency hearing over two days in January 2022 (the "January hearing"). Two experts testified at that hearing and provided the Court contrary opinions about Defendant Timothy Silvils' competency to stand trial. As the Court explained in a prior order, the State did not meet its burden at the January hearing.

The Court more recently held a second hearing on October 21, 2022 (the "October hearing"). In the October hearing, the parties again presented two experts with contrary opinions. At this stage of the proceedings, the Court considers the totality of the evidence presented in both hearings. When doing so, it finds Mr. Silvils to be competent for the reasons discussed below.

## I.   BACKGROUND

After the January hearing, the Court issued a letter decision dated March 11, 2022 (the "March Order").[1] In the January hearing, the Defense contended that Mr. Silvils suffered from dementia and that his dementia made him incompetent.[2] In response, the State presented no evidence to rebut that contention. Because of this significant gap (and another) in the evidentiary record, the Court found Mr. Silvils to be incompetent.[3] The Court then provisionally set a second competency hearing for October 21, 2022. The State retained an appropriate expert and asked the Court to proceeded with the October hearing.

---

[1] *State v. Silvils*, Del. Super., ID No. 1907008254, Clark, R. J. (Sept. 26, 2022) (ORDER).

[2] The Court refers to this contention as being that of the Defense. At varying times, Mr. Silvils told examiners that he believes he is competent to proceed to trial. That, of course is not determinative. In fact, it would have no relevance were he to be incompetent. Nevertheless, because he has often insisted that he is competent, the Court uses the term "Defense" where appropriate.

[3] *See Silvils*, 2022 WL 730746, at *3 (Del. Super. 2022) (finding Mr. Silvils incompetent to stand trial because the State failed to rebut Dr. Bell's opinion that Mr. Silvils suffered from dementia, and because of "leap-frogging" expert evaluations).

## A. The January 2022 Competency Hearing

The State alleges that Mr. Silvils stabbed his former criminal defense attorney with a knife as the attorney walked along a Wilmington sidewalk. For that alleged conduct, the State charged him with Assault Second Degree and Possession of a Deadly Weapon During the Commission of a Felony. Mr. Silvils has remained detained at either a Level V facility or the Delaware Psychiatric Center ("DPC") since his arrest in June 2019.

Mr. Silvils has suffered from schizophrenia since at least 1981. He also suffers from an anti-social personality disorder and drug dependency. During the January hearing, the parties, and their experts, agreed that DPC appropriately and effectively treated Mr. Silvils' psychosis in early 2021.[4] Accordingly, his schizophrenia, although still present, has stabilized. At the January hearing, the Defense changed its focus to the contention that Mr. Silvils suffers from rapidly progressing dementia that renders him permanently incompetent. In the Defense's view, the overlay of his dementia upon his otherwise adequately controlled schizophrenia, makes him incompetent.[5]

The Court held the January hearing remotely over two half-day sessions. There, the parties offered expert testimony that advocated opposite findings. Combined, the parties submitted eight competency evaluation reports into evidence.[6] By January 2022, there were five psychological or psychiatric experts that offered the opinion that Mr. Silvis was competent to stand trial during some portion of his pre-trial detention.[7] On the other hand, the Defense provided four separate reports authored by their expert, Dr. Jordan Bell. Dr. Bell's four reports recommend that the Court find Mr. Silvils incompetent.[8] At first, Dr. Bell based his opinion on the

---

[4] State's Ex. 7, at 3; Def. Ex. 4, at 10; Def. Ex. 7, at 4, 29.
[5] Def. Ex. 5, at 37.
[6] State's Exs. 2–5; Def. Exs. 2–5.
[7] *See* State's Exs. 2-5 (including reports by doctors Roberts, Wang, Bayner, Donohue, and Selig).
[8] Def. Exs. 2–5.

fact that Mr. Silvils had decompensated in late 2020 and required restorative treatment to address his schizophrenia.[9] Then, by the fall of 2021, Dr. Bell diagnosed Mr. Silvils with dementia.[10] At that point, Dr. Bell wrote in his report that this recently manifested dementia, on top of his then-adequately controlled schizophrenia, made him incompetent.[11]

Two experts testified at the January hearing. First, Dr. Douglas Roberts, a psychologist practicing at DPC, testified on behalf of the State. He opined that Mr. Silvils was competent.[12] When providing that opinion, he relied upon his own examination, the McCrary factors, and the opinions of other experts.[13] With respect to the other experts, he placed particular emphasis on Dr. Yi Wang's recent examination of Mr. Silvils in June 2021. Dr. Wang authored a report after that exam that also opined competence.[14] Dr. Roberts explained why he believed Mr. Silvils' answers to the McGarry questions met the statutory standard for competence.

The Defense then presented Dr. Bell's testimony. Based upon his training as a neuropsychologist, Dr. Bell believed Mr. Silvils to be *in*competent. He based that opinion on a condition that Dr. Roberts neither addressed nor considered. Namely, Dr. Bell diagnosed Mr. Silvils with rapidly progressing dementia that manifested in September 2021. Dr. Bell also explained that he had examined Mr. Silvils as recently as January 11, 2022, immediately before the hearing. By that time, he contended that Mr. Silvils' dementia had rapidly progressed since September 2021. Because of what Dr. Bell believed to be Mr. Silvils' rapidly progressing and irreversible dementia, he felt that Mr. Silvils could never be restored to competency.

---

[9] Def. Ex. 2, at 25.
[10] Def. Ex. 4, at 29.
[11] Def. Ex. 4, at 29-30.
[12] Competency Hearing Tr. at 19 (Jan. 13, 2022); State's Ex. 2, at 7.
[13] Competency Hearing Tr. at 19-20 (Jan. 13, 2022); State's Ex. 2, at 2.
[14] State's Ex. 3, at 6.

In response, Dr. Roberts conceded that he was not qualified to evaluate whether Mr. Silvils had dementia.[15] He admitted that he could offer no opinion about what impact dementia may have on his competency.[16] Dr. Roberts further conceded that DPC had no clinicians available who could assess whether Mr. Sivils suffered from dementia.[17] Finally, Dr. Roberts could not say whether Mr. Silvils' cognition had deteriorated in the short time since he last examined him in November.

### B. The March Order and the Scope of the October Hearing

As the Court explained in the March Order, Covid-19 concerns prevented the two experts from examining Mr. Silvils close in time to one another.[18] These gaps in time produced "leapfrogging" evaluations where they discounted one another's opinions, in part, on that basis.[19] For instance, Dr. Bell had twice examined Mr. Silvils between Dr. Roberts' November 2021 examination and the January 2022 hearing. Given Dr. Bell's opinion that Mr. Silvils had rapidly deteriorated in even that short timeframe, the delay became important.

In addition to "leapfrogging" examinations, the State was unable to address Mr. Silvils alleged cognitive impairment -- that is, it had no expert to rebut Dr. Bell's opinion regarding his alleged cognitive decline. It could merely address his schizophrenia. That left a second gap in the record.

As the Court further explained, the State did not meet its burden at the January hearing because Dr. Bell's recent examinations went unchallenged and DPC had no one who could evaluate Mr. Silvils for dementia.[20] As a result, the Court set a two-part procedure to address these evidentiary gaps.

First, it required the following:

---

[15] Competency Hearing Tr. at 67-68 (Jan. 13, 2022).
[16] *Id*.
[17] *Id*.
[18] *Silvils*, 2022 WL 730746, at*2.
[19] *Id*.
[20] *Silvils*, 2022 WL 730746, at *3.

[b]ecause neither DPC nor the State has considered the possibility that Mr. Silvils' dementia could be a significant contributing factor in assessing Mr. Silvils competency, they must do so to assist the Court. . . . Accordingly, if the State maintains that Mr. Silvils is competent or that he can be restored to competency, it must retain an outside evaluator to perform an appropriate evaluation. . . . [i]t must, in conjunction, with DPC, or on its own, secure an appropriate competency evaluation by a neuropsychologist or other appropriate expert.[21]

Second, the Court addressed the leap-frogging examination issue. It recognized that examinations by opposing experts, closer in time to one another, would help the Court to conduct an apples-to-apples comparison of their opinions.[22] As a result, the Court provided a schedule in the March Order that required the parties to examine Mr. Silvils and exchange supplemental reports closer in time to one another. The Court then provisionally scheduled a second hearing for October 21, 2022. The March Order gave the State the option to determine if it would request to go forward on that day.

In response to the March Order, the State retained Dr. Jonathan Mack, a neuropsychiatrist, to examine Mr. Silvils. Dr. Mack, with the assistance of his fellow Dr. Williamson, performed cognitive and competency testing. He then produced a report in August with their results and explained why he believed Mr. Silvils to be competent. The State followed with a request to proceed with the October hearing.

The Defense then asked Dr. Bell to reexamine Mr. Silvils. He did and then authored and distributed an updated report prior to the October hearing.[23]

---

[21] *Id.* at *4. Successive hearings are expressly contemplated by 11 *Del. C.* § 404(a). The statute recognizes that if a court finds a defendant incompetent, that defendant must be committed to DPC for restorative treatment until he or she can stand trial. That mechanism inevitably contemplates successive hearings under appropriate circumstances.
[22] *Id*. at *3.
[23] Def. Ex. 6.

Upon confirmation of the need for a second hearing, the Court wrote the parties to clarify what evidence it would consider. Namely, the Court explained that it would consider the following:

> [i]n addition to the testimony and documents submitted by the parties at the first competency hearing, the Court will consider any new expert evidence presented by the parties and any additional documents that are relevant to his competency. In other words, the parties may address what they feel necessary at the supplemental hearing but need not reintroduce the exhibits provided in the first hearing or provide duplicate testimony.[24]

### C. Supplemental Evidence Presented at the October Hearing

The Court then convened the October hearing. There, Dr. Mack testified at length on behalf of the State. His testimony distills into four separate opinions. As a basis for those opinions, he explained how he, and Dr. Williamson, examined Mr. Silvils in person at DPC. In total, one or the other of them met with him for a combined twenty-two hours over four sessions.

First, he testified that Mr. Silvils suffers from *mild* cognitive impairment. He believes it to be structural and not a condition that recently materialized. In other words, he believes that Mr. Silvils has always had an intellectual disability. Second, he offered the opinion that there is no basis for Dr. Bell to diagnose Mr. Silvils with dementia. According to Dr. Mack, there would have to be significant diagnostic testing for any expert to present such a conclusion and no such diagnostics are available. Third, he opined that Mr. Silvils' schizophrenia is well controlled and does not make him incompetent. Fourth and ultimately, he opined that Mr. Silvils is competent to stand trial despite having mild cognitive impairment overlayed upon schizophrenia.

Dr. Bell testified next and disagreed with all four points. At the outset, he

---

[24] *State v. Silvils*, Del. Super., ID No. 1907008254, Clark, R. J. (Sept. 26, 2022) (ORDER).

disagreed with Dr. Mack's opinion that Mr. Silvils has always exhibited an intellectual disability. In support, he emphasized that during the many evaluations performed on Mr. Silvils over the years, no clinician or evaluator before Dr. Mack had diagnosed him with a structural cognitive impairment (as contrasted to a recent dementia driven impairment). He also markedly disagreed with Dr. Mack's choice of cognitive tests and challenged their validity.

After contesting Dr. Mack's opinions, Dr. Bell next told the Court that Mr. Silvils suffers from *moderate to severe* cognitive impairment secondary to dementia. He believes that this degree of cognitive impairment makes Mr. Silvils incompetent to stand trial. Finally, Dr. Bell emphasized that he believed Mr. Silvils to be permanently incompetent because of his dementia.

### D. The Parties' Positions

Here, the parties agree on two points. Namely, although Mr. Silvils suffers from schizophrenia, they agree that it is adequately controlled through long-term injectable medication. Accordingly, both parties agree that his psychosis, were it to be viewed in a vacuum, would not render him incompetent. Furthermore, both parties agree that Mr. Silvils is cognitively impaired.

They disagree, however, regarding the degree of that impairment and what effect it has on his competency. On one hand, the State contends that his impairment is mild in nature and has always been present because it is his long-standing baseline. On the other hand, the Defense contends that his cognitive impairment is moderate to severe in degree. The Defense also contends that it has only recently manifested and will rapidly progress. In distilling their arguments for simplicity, the parties advocate different competency findings because they disagree about the degree of his cognitive impairment.

As a final matter, the Defense asks the Court to declare Mr. Silvils permanently incompetent. The State does not address that issue because it believes him to be competent. As the State correctly recognizes, if the Court accepts the

8

State's position regarding his present competency, he could not be permanently incompetent.

## II.    STANDARD

Competency is a legal concept, not a medical one.[25]   The State has the burden of proof on the issue, and must demonstrate that a defendant is competent to stand trial by a preponderance of the evidence.[26]   The General Assembly has codified the applicable standard for competency and has tracked United States Supreme Court precedent when doing so.  Namely, 11 *Del. C.* § 404(a) provides:

> [w]henever the court is satisfied, after hearing, that an accused person, because of mental illness or serious mental disorder, is [(**1**)] unable to understand the nature of the proceedings against the accused, or [(**2**)] to give evidence in the accused's own defense or [(**3**)] to instruct counsel on the accused's own behalf, the court may order the accused person to be confined and treated in the Delaware Psychiatric Center until the accused person is capable of standing trial.[27]

When applying this standard, Delaware courts use varying, though similar, criteria.  For instance, they have used the McGarry criteria,[28] which are widely known as the "Competency to Stand Trial Instrument."[29]  Other courts have used the factors identified in the Nebraska Supreme Court's decision in *State v. Guatney*.[30]

---

[25] *Feliciano v. State*, 157 A.3d 1235, 2017 WL 897421, at *13 (Del. Mar. 3, 2017) (ORDER).
[26] *Diaz v. State*, 508 A.2d 861, 863 (Del. 1986).
[27] 11 *Del. C.* § 404(a) (emphasis added).  This statutory standard tracks the standard set forth by the United States Supreme Court in *Dusky v. United States*, 362 U.S. 402 (1960) and *Drope v. Missouri*, 420 U.S. 162 (1974).
[28] *State v. Shields*, 593 A.2d 986, 1000 n.23 (Del. 1990). The McGarry factors are one assessment procedure used by mental health experts to evaluate competency to stand trial.  In citing the Superior Court's use of them in the *Shields* decision, the Delaware Supreme Court expressly approved of that assessment procedure.  *Feliciano*, 2017 WL 897421, at *13.
[29] *Feliciano*, 2017 WL 897421, at *13.
[30] 299 N.W.2d 538 (Neb. 1980). The *Guatney* factors are not altogether different from the McGarry criteria.  Rather, they are more specific.  They include:
    (1) That the defendant has sufficient mental capacity to appreciate his presence in

These tests, and similar ones, evaluate a defendant's basic knowledge of the process and his or her ability to participate in his or her defense.

Determining competency is fact specific. When doing so, the Court must consider the totality of the evidence – no single factor is determinative.[31] As the Delaware Supreme Court has recognized, "[w]e cannot . . . exclude from trial all persons who lack the intelligence or legal sophistication to participate actively in their own defense. . . . The accused need not understand every legal nuance in order to be competent."[32] It has further explained that if a defendant "[p]ossesses the mental capacity to appreciate his presence in relation to time, place and things, . . . . grasps that he has been charged with serious crimes, . . . knows that he can be sentenced to [a set period] if convicted, . . . and is sufficiently coherent to provide his attorney with information necessary or relevant to construct a defense, then the defendant is competent to stand trial."[33]

---

relation to time, place, and things; (2) that his elementary mental processes are such that he understands that he is in a court of law charged with a criminal offense; (3) that he realizes there is a judge on the bench; (4) that he understands that there is a prosecutor present who will try to convict him of a criminal charge; (5) that he has a lawyer who will undertake to defend him against the charge; (6) that he knows that he will be expected to tell his lawyer all he knows or remembers about the events involved in the alleged crime; (7) that he understands that there will be a jury present to pass upon evidence in determining his guilt or innocence; (8) that he has sufficient memory to relate answers to the questions posed to him; (9) that he has established rapport with his lawyer; (10) that he can follow the testimony reasonably well; (11) that he has the ability to meet stresses without his rationality or judgment breaking down; (12) that he has at least minimal contact with reality; (13) that he has the minimum intelligence necessary to grasp the events taking place; (14) that he can confer coherently with some appreciation of proceedings; (15) that he can both give and receive advice from his attorneys; (16) that he can divulge facts without paranoid distress; (17) that he can decide upon a plea; (18) that he can testify, if necessary; (19) that he can make simple decisions; and (20) that he has a desire for justice rather than undeserved punishment. *Id.* at 545.

[31] *Felicano,* 2017 WL 897421, at *13

[32] *Id.* (citing *Shields*, 593 A.2d at 1005).

[33] *Feliciano*, 2017 WL 897421, at *14 (quoting *Shields*, 593 A.2d at 1012).

## III.    ANALYSIS

Mr. Silvils is competent to stand trial for the reasons discussed below. At the outset, the Court will explain several general factual findings that help it to reconcile, in part, and differentiate, in part, such markedly contrasting expert opinions. After explaining these general findings, the Court will discuss its findings under the McGarry criteria. The Court's broader observations and specific McGarry findings persuade it that Mr. Silvils understands the nature of the proceedings, can provide sufficient input to his counsel, and can provide evidence in support of his defense.

### A. General Findings

The disagreeing experts were well-qualified, articulate, informative, and helpful. In the January hearing, Dr. Roberts made a helpful neutral observation that explains why the experts' opinions differed so. Namely, he correctly observed that they primarily diverge as to where the line for competency should be drawn: a determination to be made by the Court in the end. To first explain how the Court resolves this dispute, it makes the following general observations.

First, as the Court explained in its March Order, Dr. Bell's opinion that Mr. Silvils suffered from rapidly progressing, and permanent dementia caused the Court concern. Frankly, during the January hearing, the State did not meet its burden because it left that opinion unrebutted. In the intervening months, the State developed additional evidence. Now, Dr. Mack's persuasive testimony, when considered with the totality of the evidence, supports the finding that Mr. Silvils has mild cognitive impairment, as opposed to moderate or severe impairment.

Second, Mr. Silvils' cognitive impairment did not progress after the January hearing as Dr. Bell had predicted. Dr. Bell's testimony on that issue is unpersuasive because any minor decrease in his assessments most likely involve reasonable testing deviations from session to session. Furthermore, the Court is persuaded that Mr. Silvils' cognition remained stable over a timeframe longer than between January

11

and October 2022.   It remained consistent from *at least June 2021 through the present*.   That consistency makes Dr. Wang and Dr. Robert's 2021 competency evaluations and opinions directly relevant to the Court's decision.

Third, Dr. Bell's observations were limited, in part, by Mr. Silvils' refusal to cooperate with Dr. Bell during testing.  Mr. Silvils frequently became impatient with Dr. Bell during those assessments, and that likely impacted the results.  The Court assigns no fault to Dr. Bell because he performed much of his testing remotely due to Covid-19 concerns.  Nevertheless, the circumstances provided an advantage to Dr. Roberts, Dr. Mack, and Dr. Williamson in this case.  Namely, they examined Mr. Silvils in person and could provide him breaks when he lost patience.  They could then redirect him and  complete their testing.  Furthermore, Dr. Mack's and Dr. Williamson's live evaluations took place over four days and lasted over twenty-two hours.  The number and length of the exams provide more weight to Dr. Mack's opinion.

Fourth, while neither Dr. Mack nor Dr. Williamson evaluated Mr. Silvils using the McCrary or *Guatney* factors, they performed several other cognitive function assessments and competency tests that support Dr. Mack's opinion.[34] Although those two experts did not use the McCrary questions verbatim, their decision to forgo them is mitigated by Dr. Wang's and Dr. Robert's use of that assessment tool.  Again, because Mr. Silvils' cognitive condition was static over the afore-mentioned period, those earlier assessments are probative of Mr. Silvils' current condition.  Dr. Wang applied the McGarry questions during his examination in June 2021.  Dr. Roberts also applied them in November 2021.

Fifth, from a lay perspective, Mr. Sivlis' responses to the questions posed by the various examiners demonstrate an adequate understanding of the legal process. He answered nearly all the questions posed in a manner that persuades the Court that

---

[34] State's Ex. 6, at 2-3.

he is competent to stand trial in a criminal case. His many coherent and relevant responses demonstrate that he understands what he must do to assist in his defense, what risks he faces, and the roles of the various participants in the system.

Sixth and finally, the Court had the benefit of observing Mr. Silvils' demeanor over three separate hearing days. In fact, live testimony and argument spanned approximately five hours of courtroom time on October 22, 2022 – not unlike a typical trial day. Mr. Silvils remained attentive and controlled throughout the session. Likewise, he remained similarly attentive and controlled throughout the two-day remote hearing in January. For instance, Mr. Silvils requested and received multiple recesses to speak privately with counsel and to ask him questions during the January hearing sessions. One who asks questions and receives answers is participating in his defense. At trial, the Court will provide Mr. Silvils frequent breaks, if necessary, to permit him ample time to discuss matters with his attorney and provide input. For these reasons, the Court's observations during his presence in the courtroom and during the separate remote proceedings support the Court's finding that he is competent.

In summary, (1) an absence of cognitive decline in Mr. Silvils since June 2021, (2) the additional testimony provided by Dr. Mack, (3) Mr. Silvils' consistent coherent responses to questions posed by examiners since June 2021, and (4) his demeanor during three separate hearing days support a finding that he is competent.

### B. The McGarry Factors and Dr. Mack's Cognitive Testing

There is no uniform test that courts use to determine competency. The McGarry questions are an assessment procedure frequently used by mental health professionals. The Delaware Supreme Court has expressly recognized them as the "Competency to Stand Trial Instrument" in Delaware.[35]

They include the following:

---

[35] *Feliciano*, 2017 WL 897421, at *13.

(1) The defendant's ability to appraise the legal defenses available; (2) the defendant's ability to plan a legal strategy; (3) level of manageable behavior; (4) quality of relating to his or her attorneys; (5) ability to appraise the participants in the courtroom; (6) understanding of court procedures; (7) appreciation of the charges; (8) appreciation of the range and nature of the penalties; (9) ability to appraise the evidence and likely outcome; (10) capacity to disclose to his or her attorneys available pertinent facts surrounding the offense; (11) capacity to challenge prosecution witnesses realistically; (12) capacity to present relevant testimony; and (13) motivation for a positive outcome. *Id*.

Here, the record includes the reports of Dr. Wang, Dr. Roberts, and Dr. Mack.[36] All three include Mr. Silvils' responses to the McGarry questions and to questions that closely resemble them.[37] Those responses demonstrate that he can apprise himself of the legal defenses available, with the help of counsel. His answers also demonstrate that he understands the role of the parties in the courtroom, the nature of the evidence in his case, and how to interact with his attorney. They likewise demonstrate that he understands the potential penalties and minimum mandatory sentence he faces if convicted. They further demonstrate that he is motivated for a positive outcome because he wants to "get a lighter sentence for time served"[38] Based upon the latter answer and others, Dr. Bell's concern that he may sit too passively through trial (as opposed to interfering with the trial) is not persuasive. During both hearings, he demonstrated his ability to manage his behavior well.

In the light of Mr. Silvils' responses to these questions, the results of Dr. Mack's alternative cognitive ability tests, and the other evidence of record, the State has met its burden. A final case review and trial date will be scheduled as soon as practical.

---

[36] State's Exs. 2, 3, 6.

[37] State's Ex. 2, at 4-7; State's Ex. 3, at 4-6; State's Ex. 6, at 65-68.

[38] *See* Def. Ex. 7, at 24 (stating that he should be given time served since he already served three years and that is a "long time").

14

## IV. CONCLUSION

For the reasons discussed above, the Court makes the following factual findings: (1) Mr. Silvils suffers from mild cognitive impairment; (2) that mild impairment did not worsen between June 2021 and the present; (3) DPC has adequately controlled Mr. Silvils' schizophrenia through medication; (4) his schizophrenia does not independently make him incompetent to stand trial; (5) his schizophrenia, in combination with his cognitive impairment, does not render him incompetent; and (6) he meets the standard set forth in 11 *Del. C.* 404(a) to proceed to trial.

In reliance on these findings, the Court **ORDERS** the following:

1. Defendant Timothy Silvils is competent to stand trial;

2. A scheduling conference will follow shortly to set a final case review and trial date as soon as practical; and

3. While Mr. Silvils awaits trial, he shall remain at DPC for continued stabilization treatment to ensure that he remains competent.

/s/Jeffrey J Clark
Resident Judge

15